Sharon L. TRETTER, Respondent,

v.

LIQUIPAK INTERNATIONAL,
INC., Appellant.

No. C5–84–620.

Court of Appeals of Minnesota.

Oct. 23, 1984.

Daryle L. Uphoff, Minneapolis, for appellant.

Robert C. Bell, St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and CRIPPEN and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Liquipak International, Inc. appeals a judgment awarding Sharon Tretter $11,000 for sexual harassment by a Liquipak supervisor. The award included $4,500 for mental anguish and suffering, $6,000 for loss of employment benefits, and $500 in punitive damages. We affirm.

## FACTS

Appellant Liquipak International, Inc. (Liquipak) hired respondent Sharon Tretter (Tretter) in 1971. In December 1980 Liquipak hired Joseph Razidlo as a service manager. From January through June 1981, Joseph Razidlo made frequent, offensive overtures to Tretter and other employees. Razidlo leered at Tretter. He told her that her perfume "brought out the animal in him," and that "her nice ass was driving him crazy." Once, Razidlo knelt close to her chair, touched her on her left breast and told her that he didn't want her to have a hairy chest. At first, Tretter tried to ignore the sexual overtures. But when they persisted she asked Razidlo to stop. Razidlo replied that he could not understand why she was offended.

In April 1981, co-worker Shiela Hunt asked Razidlo to stop harassing Tretter. In May, Hunt reported Razidlo to the personnel director. The president and the personnel director of Liquipak told Razidlo to stop the harassment. Razidlo apologized to Tretter and stopped the offensive sexual behavior. However, he was rude to Tretter and refused to speak with her.

Liquipak had financial difficulties in 1981 resulting in lay offs. In October 1981, at Razidlo's recommendation, Tretter was demoted. She was laid off in April 1982. None of the other employees laid off in October 1981 and April 1982 had as much seniority as Tretter. Liquipak did not recall Tretter. The company subsequently hired a part time employee in her old department. Tretter was unemployed for six weeks. She found another job with fewer benefits and less to her liking. By all accounts, including Razidlo's, Tretter was an excellent employee.

## ISSUES

1. Did the trial court err in finding that Tretter's demotion and termination were in reprisal for her participation in the investigation of Razidlo's alleged sexual harassment?

2. Was the trial court correct in imputing supervisor Razidlo's conduct to his employer, Liquipak?

3. Did the trial court err in awarding Tretter punitive damages and costs?

4. Should the court of appeals award Tretter costs of appeal?

## ANALYSIS

1. Appellant contends that the trial court erred in ruling that Liquipak demoted and terminated Tretter in reprisal for her complaint about Razidlo's sexual harassment. The function of a reviewing court is not to weigh the evidence as if trying the matter de novo, but rather to determine if the evidence as a whole sustains the trial court's findings. *Haas v. Harris*, 347 N.W.2d 838 (Minn.Ct.App.1984), (citing *Don Kral, Inc. v. Lindstrom*, 286 Minn. 37, 173 N.W.2d 921 (1970)).

The Minnesota Supreme Court held that the prohibition against sex discrimination in Minn.Stat. § 363.03, subd. 1(2)(c) (1982), includes sexual harassment which affects conditions of employment when the employer knows or should have known of the employee's conduct and fails to take timely and appropriate action. *Continental Can Co., Inc. v. State of Minnesota*, 297 N.W.2d 241 (Minn.1980). In 1982, the legislature amended the Minnesota Human Rights Act to clarify that the definition of actionable sexual discrimination includes sexual harassment. Minn.Stat. § 363.01, subd. 10a (1982). Clearly, Razidlo's offensive comments, leering, and touching are actionable sexual harassment under the Minnesota Human Rights Act.

Minn.Stat. § 363.03, subd. 7 (1982), forbids reprisal for actions sanctioned under the Human Rights Act. To establish a prima facie case of retaliation an employee must establish: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428 (Minn.1983), (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Here, Tretter's complaints to Razidlo and her interviews with the personnel department were statutorily-protected conduct. Shortly after these actions, Tretter was demoted and terminated. The critical question is whether there was a causal connection between the two.

Razidlo's sexual harassment made Tretter's work environment intolerable for six months. Liquipak finally ordered Razidlo to stop the harassment, but did not discipline him for it. Even after the leering and the sexual comments ceased, Razidlo continued to make Tretter's life miserable by being rude to her. Three months after the company asked Razidlo to stop the sexual harassment, he recommended Tretter be demoted. Liquipak complied.

Six months after the demotion, Tretter was laid off. Although the company had financial difficulties, Tretter was the only employee with 11 years seniority to be terminated. Moreover, Liquipak made no attempt to rehire Tretter when several months later it needed another employee in her former department. Instead, it hired someone with no prior experience with Liquipak. These facts support the trial court's determination that Tretter's demotion and termination were reprisals.

2. Liquipak contends that it is not responsible for the harassment of its supervisor Razidlo. In a recent harassment case, the Minnesota Supreme Court imputed a manager's knowledge of harassment to the employer and held the employer liable for damages. *McNabb v. Cub Foods*, 352 N.W.2d 378 (Minn.1984). Here, Razidlo was a supervisory employee who not only knew of the harassment, but was the perpetrator. It was common knowledge in Tretter's department that Razidlo harassed Tretter and other employees. Hunt and Tretter told Razidlo that his behavior was improper, but he continued to harass Tretter for three more months. Finally, Hunt reported the incidents to the personnel department and the harassment stopped. Liquipak knew or should have known of the harassment that had been occurring for six months. Therefore, Liquipak is liable for its supervisor's acts of harassment. *See Miller v. Bank of America*, 600 F.2d 211 (9th Cir.1979).

An employer can avoid liability for harassment committed by its employees by taking timely, appropriate, remedial action. This may include dissemination of an anti-

harassment policy, transferring the employee to another shift, or taking or threatening disciplinary action against offending employees. *McNabb*, 352 N.W.2d at 384. An employer must take strong, swift action to separate itself from the harassment of the offending supervisor. Here, Liquipak did not discipline the offending supervisor and did nothing to ensure that the working conditions for Tretter improved. In fact, at Razidlo's recommendation, Tretter was demoted. Several months later, Tretter was terminated.

3. Appellant contends that the trial court erred in awarding Tretter punitive damages and costs. To procure punitive damages, a party must prove that defendant's acts show a willful indifference to the rights or safety of others. Minn. Stat. § 549.20, subd. 1 (1980). *See Peterson v. Sorlien*, 299 N.W.2d 123, 129 (Minn. 1980), *cert. denied*, 450 U.S. 1031, 101 S.Ct. 1742, 68 L.Ed.2d 227 (1981). Razidlo's sexual harassment for six months falls within that standard. Liquipak did not discipline the offending supervisor, and less than a year later Liquipak terminated Tretter. The trial court did not err in awarding punitive damages.

Minn.Stat. § 363.14, subd. 3 (1982), provides that the court may in its discretion allow the prevailing party a reasonable attorney's fee as part of the litigation costs in a discrimination suit. It was within the trial court's discretion to award attorney's fees.

Tretter urges that the court of appeals, in awarding her costs pursuant to Minn.R. Civ.App.P. 139, include reasonable attorney's fees. Pursuant to this rule, we hereby award respondent $750 in attorney's fees.

### DECISION

We affirm the trial court's decision and award attorney's fees of $750 for this appeal.