Jane F. BERSIE, Appellant,

v.

ZYCAD CORPORATION, Respondent.

No. CX–87–1003.

Court of Appeals of Minnesota.

Dec. 29, 1987.

Donald E. Horton, Sonja R. Peterson, Minneapolis, for appellant.

Lee A. Bernet, III, St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment concluding Zycad Corporation did not discharge Jane F. Bersie for reasons based on her sex, or knowingly allow her to endure an intimidating, hostile, or offensive working environment in violation of the Minnesota Human Rights Act. We affirm.

## FACTS

Jane Bersie was hired by Zycad Corporation (Zycad) in March 1982 to work as a computer systems analyst/programmer. Most Zycad employees have backgrounds in electrical engineering because of the company's clientele and product focus. Bersie has a masters degree in mathematics and programming experience, but does not have an engineering background.

Bersie was responsible for maintaining some of Zycad's computer operating systems and also was required to perform certain programming tasks which became increasingly sophisticated as the months passed and the company developed. Bersie indicated to her supervisor, Harley Horsager that she felt she was not accorded the same respect as the other employees be-

cause she did not have an engineering background.

Horsager concluded during the first few months of 1983 that Bersie's work was unsatisfactory and that she was incapable of performing certain technical tasks. According to Horsager, Bersie was not completing projects in a timely manner, did not relate well to co-employees, and was becoming increasingly difficult to supervise. Horsager testified about Bersie's inability to complete an important programming project despite several new deadlines. He also testified about how Bersie "lost" a bank of computer files which were needed for an important computer show and that he had to spend significant amounts of time assisting Bersie with projects. Horsager decided to change Bersie's work responsibilities so she could work on assignments at which she could succeed and which would help re-establish her self-confidence.

In July 1983, Bersie told Horsager she was having problems at work relating to other employees and that she thought she did not have a future with Zycad because she was not an engineer. Bersie said she was unhappy, indicated that maybe she should quit and suggested Zycad might consider firing her instead so she could qualify for unemployment benefits.

On August 4 Bersie gave Horsager a letter which indicated she considered herself involuntarily terminated. In a reply letter, Zycad agreed Bersie's employment was terminated as of her conversation with Horsager on July 30 and enclosed a check which included two weeks severance pay and accrued vacation pay. Several days later, Bersie's attorney sent a letter to Zycad in which he stated Bersie had "reluctantly decided that her sex was a significant factor" in her termination.

Bersie summarized incidents of sexual harassment such as an employee calling her "sweetheart" and "doll" several times and placing his hands on her neck and shoulders on a few occasions. The employee engaged in similar conduct with other female employees. According to Bersie, another employee asked Bersie why she did not prostitute herself for a living. Bersie testified that she resented the remarks but admitted they were a failed attempt at humor. Bersie indicated that those individuals and a third employee suggested Bersie and a male customer were "really tight" and asked if they should call her husband, alluding to recent stories about Control Data which had been accused of providing prostitutes for its customers. Bersie cited an incident in which one of those employees allegedly moved his chair close to Bersie's chair and leaned his body in close proximity to Bersie's body. Bersie also referred to an incident in which magazine photographs of nude women were posted on the walls of a male employee's cubicle on that employee's fortieth birthday. The photographs were removed by the next day at the direction of the company president. Although Bersie met with Horsager on numerous occasions to complain or report about job and performance problems, Bersie admitted she never reported any of these incidents to Horsager, who claimed no knowledge of the incidents.

In March 1984, Bersie filed a lawsuit against Zycad alleging sexual discrimination and harassment in violation of the Human Rights Act. She also asserted various contract and tort claims based on fraud, misrepresentation, and defamation. An advisory jury returned a special verdict in Zycad's favor, finding no defamation and no sexual discrimination and/or sexual harassment. The trial court adopted those findings and directed entry of judgment for Zycad. On appeal, this court concluded the trial court's findings were not adequate and remanded for appropriate findings. See Bersie v. Zycad Corp., 399 N.W.2d 141 (Minn.Ct.App.1987).[1]

On remand, the trial court adopted Zycad's proposed findings and conclusions with only minor changes. The court found that Bersie's termination was based on "le-

1. Although this court suggested Bersie had made a prima facie showing of sex discrimination, the issue on appeal was limited only to whether the trial court's findings were adequate. See Bersie, 399 N.W.2d at 144.

gitimate non-discriminatory business performance-related reasons justified by the facts and circumstances taken as a whole," including Bersie's "increasing inability to cope with project deadlines and her inability to get along with co-employees and her manager." The court concluded Bersie "failed to establish by credible evidence" the factors necessary to prove a prima facie case of sexual discrimination and harassment.

Bersie appeals from the February 1987 judgment and the denial of her post-trial motions for amended findings and a new trial.

## ISSUE

Did the trial court err by concluding the appellant did not suffer sexual harassment or discrimination and that her employer did not violate the Minnesota Human Rights Act?

## ANALYSIS

The trial court's findings "will not be disturbed if they are reasonably supported by evidence in the record considered as a whole." *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 441 (Minn. 1983). *See* Minn.R.Civ.P. 52.01 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").

### *Sexual Harassment and Discrimination Claims*

Under the Minnesota Human Rights Act, it is an unfair employment practice for an employer, because of sex,

(b) to discharge an employee; or

(c) to discriminate against a person with respect to his [or her] hire, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn.Stat. § 363.03, subd. 1(2) (1982). Sexual harassment is a form of sex-based discrimination and may include conduct or communication which "has the purpose or effect of substantially interfering with an individual's employment, * * * or creating an intimidating, hostile, or offensive employment * * * environment." *See id.* § 363.01, subds. 10, 10a. In employment cases, the employer must know or should have known of the harassment and fail to take timely and appropriate action. *See id.* § 363.01, subd. 10a(3); *see also Continental Can Co., Inc. v. State*, 297 N.W.2d 241, 249 (Minn.1980).

Since this is a disparate treatment claim under the Minnesota Human Rights Act, we must apply a three-part analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sigurdson v. Isanti County*, 386 N.W.2d 715, 719–20 (Minn.1986). That analysis requires the complainant to establish a prima facie case of discrimination, the employer to answer that showing, and the complainant to rebut the employer's evidence of nondiscrimination. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

Five factors may demonstrate sexual harassment and may be used to establish a prima facie case.

1. Did the employee belong to a protected class?

2. Was the employee subject to unwelcome sexual harassment?

3. Was the harassment complained of based upon sex?

4. Did the harassment complained of affect a "term, condition, or privilege" of employment? (Or, more exactly, in Bersie's case did the harassment create an "intimidating, hostile, or offensive working environment?")

5. Respondeat superior (did the employer know or should the employer have been aware of the harassment?).

*Bersie*, 399 N.W.2d at 146 (citing *Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982)).

Bersie asserts her sex discrimination claims under the Minnesota Human Rights Act. For the purposes of our analysis, Bersie is a member of a protected class.

While some conduct of Bersie's co-employees was offensive, the evidence sup-

ports the trial court's conclusion that Bersie's employment problems were caused in large part by her "increasing inability to cope with project deadlines and her inability to get along with co-employees and her manager." When viewed as a whole, the record indicates Bersie's problems were personal problems unrelated to her status as a female employee. *See Continental Can Co.,* 297 N.W.2d at 249 ("all the circumstances surrounding the conduct alleged to constitute sexual harassment, such as the nature of the incidents and the context in which they occurred, should be examined").

The record indicates that the vast majority of Bersie's "harassment" and interpersonal problems with her co-employees were not based on sex, but were the result of Bersie's apparent lack of the requisite technical skills.[2] After reviewing the entire record, we cannot conclude the conduct of Bersie's co-employees "substantially" interfered with Bersie's employment or that the incidents were not "sufficiently severe or pervasive so as 'to alter the conditions of [the victim's] employment and create an abusive working condition.'" *See Klink v. Ramsey County,* 397 N.W.2d 894, 901 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. Feb. 13, 1987) (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, ——, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986)).

> [T]he prohibition against sex discrimination in [the Human Rights Act] includes sexual harassment which impacts on the conditions of employment *when the employer knew or should have known of the employees' conduct alleged to constitute sexual harassment and fails to take timely and appropriate action.*

*Continental Can Co.,* 297 N.W.2d at 249 (footnote omitted; emphasis added).

Bersie never complained or told Horsager about any of the incidents which Bersie alleges constitute sexual harassment. Horsager denies actual knowledge of the incidents, and the record does not indicate the incidents were so obvious or pervasive the employer should have known of the alleged misconduct. *See* Minn.Stat. § 363.01, subd. 10a(3) (the employer must know or should have known of the existence of the harassment and failed to take timely and appropriate action).

Since the evidence does not show Zycad had actual or constructive knowledge of the objectionable incidents, Bersie failed to prove a prima facie case of sex discrimination. Bersie's discrimination claims and the factual circumstances of her case were established largely by testimony which the trial court was able to hear and assess firsthand.

> Employment discrimination cases often involve intricate factual issues in which only the trial court, with its opportunity to observe the witnesses firsthand, can meaningfully assess the weight and credibility of the evidence. We have traditionally accorded great deference to the trial court in making findings of fact, recognizing that much must necessarily be left to its sound judgment and discretion because it has the advantage of fully hearing the testimony and acquiring a thorough familiarity with all the circumstances of the case. An appellate court cannot judge the credibility of a witness or the weight, if any, to be given to testimony.

*Sigurdson v. Isanti County,* 386 N.W.2d 715, 721 (Minn.1986) (citations omitted). Bersie's case was tried before an advisory jury which also determined there was no sexual discrimination or harassment. We must defer to the factfinders' conclusions when the findings "are reasonably supported by evidence in the record considered

---

**2.** The dissent suggests that this opinion's characterization of the facts is weak. However, a substantial portion of the record deals only with Bersie's job performance and the difficulties she was experiencing while trying to complete tasks which required sophisticated skills she did not necessarily possess. Moreover, according to a letter from Bersie's attorney sent almost three weeks after Bersie's termination, Bersie "reluctantly decided that her sex was a significant factor in the [termination] decision," only after she could not discern other reasons for her termination or her employer's "actual motivation." According to the Human Rights Act, sexual harassment must "substantially" interfere with an individual's employment. *See* Minn. Stat. § 363.01, subd. 10a(3).

as a whole." *See Hubbard,* 330 N.W.2d at 441; *see also Tretter v. Liquipak International, Inc.,* 356 N.W.2d 713, 715 (Minn.Ct. App.1984) (an appellate court does not "weigh the evidence as if trying the matter de novo," but determines "if the evidence as a whole sustains the trial court's findings"). Based on our review of the entire record, we cannot say the trial court erred by concluding Bersie's termination was not based on her sex, or by concluding Zycad did not allow Bersie "to endure an intimidating and hostile employment environment."

### Reversible Error Per Se

■ Bersie contends the trial court improperly adopted Zycad's proposed findings of fact and conclusions of law because the court adopted the findings almost verbatim. Such adoption by itself is not improper if the record supports the findings and shows the trial court conscientiously considered all the issues. *See Sigurdson v. Isanti County,* 408 N.W.2d 654, 657 (Minn. Ct.App.1987) *pet. for rev. denied* (Minn. Aug. 19, 1987). The record supports the trial court's findings.

### DECISION

The trial court did not err by concluding the appellant did not suffer sexual harassment or discrimination in violation of the Minnesota Human Rights Act. The appellant failed to establish a prima facie case of sex discrimination.

Affirmed.

FORSBERG, Judge (concurring specially):

I concur on the basis that Bersie failed to prove steps 3, 4, and 5 of the *Henson* test. (See majority opinion, p. 290.)

In steps 3 and 4 reference is made to the "harassment complained of." At no time did Bersie complain to anyone, either formally or informally of the acts alleged to constitute sexual harassment. She did complain about virtually everything associated with her job, including difficulty getting along with female employees. Moreover, it is very unlikely that she would complain about these acts being sexual harassment when she, herself, testified that she was not mistreated *because* she is a *female.*

Moreover, in regard to step 5, the acts complained of were committed by co-employees. There may be a question as to Allenbaugh's status. However, Bersie, herself, testified as follows:

Q: And [Allenbaugh] is a coemployee?

A: Yes.

Q: As is Mr. Gilson is Mr. Olson?

A: That is correct.

Q: Mr. Olson and Mr. Gilson and Mr. Allenbaugh were all co-employees, correct?

A: That is correct.

Q: None of them were supervisors or officers of the company?

A: That is correct.

In any event, Bersie did not prove Allenbaugh's status as a supervisor; but even if true, he is without doubt not Bersie's supervisor, and an unrelated supervisor is no different than a co-employee for purposes of making the employer aware of sexual acts. And certainly, acts of sexual harassment of co-employees cannot be attributed to the employer, and step 5 is so designed to prevent it. One can imagine on an assembly line the number of lawsuits a company would have to face if it was directly responsible for acts of co-employees toward each other.

LANSING, Judge (dissenting).

The record compels a finding that Jane Bersie was subjected to sexual harassment in violation of the Minnesota Human Rights Act. As a woman, Bersie was clearly a member of a class protected by the Act. Minn.Stat. § 363.03, subd. 1(2)(c) (1982). Moreover, despite the opinion's weak characterization of the facts, the record conclusively indicates that Bersie was subject to sexual harassment. Accordingly, the trial court's judgment should be reversed and the case should be remanded for a new trial.

Sexual harassment includes

unwelcome ·* * * sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when * * * that conduct or communication has the purpose or effect of substantially interfering with an individual's employment * * * or creating an intimidating, hostile, or offensive employment * * * environment.

Minn.Stat. § 363.01, subd. 10(a). To state that "Bersie's problems were personal problems unrelated to her status as a female employee" is to ignore the language of the Act. Under the statute, the issue is whether Bersie was subjected to sexual harassment, not whether this harassment was her primary employment problem.

The record evidences a number of acts of harassment. A Zycad supervisor[1] suggested that Bersie may have been hired only because she was a woman, and asked her why she didn't just become a prostitute for a living. *Bersie v. Zycad Corporation,* 399 N.W.2d 141, 142 (Minn.Ct.App.1987) (*Bersie I*). Calling these remarks a "failed attempt at humor" does not negate their sexually harassing character. The Act does not contain an exception for derogatory remarks that are intended to be funny, and creating such an exception here would substantially destroy the Act's purpose of protecting women from offensive conduct affecting employment conditions.

That same Zycad supervisor also participated in an incident in which he and two other employees suggested that Bersie's relationship with a customer was sexual and analogized it to prostitution on behalf of the company. *Id.* at 143. In addition, a Zycad founder and executive decorated an employee cubicle with pictures of nude women; although the company president saw the pictures in the morning, he did not call them inappropriate until midday and did not direct their removal. The company executive who put up the pictures also failed to intervene and appeared to approve when one of Bersie's male co-employees

initiated unwelcome physical contact with Bersie and called her and other female employees "sweetheart" and "doll." *Id.*

A number of other incidents, set forth in *Bersie I,* such as turning off the computer, giving Bersie the runaround on projects and blocking her entrance to the laboratory, are less patently sexual harassment, but appear to derive from the same motives, particularly as some of them were perpetrated by the same supervisor who had made the sexually derogatory comments. Whether or not the performance issues resulted from this atmosphere, these incidents establish that Bersie was subjected to repeated, unwelcome physical and verbal conduct based on her sex, and this conduct was sufficiently pervasive to create an abusive working environment. *Compare Minneapolis Police Department v. Minneapolis Commission on Civil Rights,* 402 N.W.2d 125, 131 (Minn.Ct.App. 1987), *pet. for rev. granted* (Minn. May 18, 1987). I cannot agree with the trial court's characterization of these events as "good-natured give and take banter that is part of any working environment."

The opinion is misleading in its characterization of *Bersie I* as limited to the adequacy of the findings. While the issue was framed that way, *Bersie I* actually centered on the adequacy of the trial court's *analysis* of the evidence. As *Bersie I* notes, a prima facie case of harassment can be established by "showing the 'bare essentials' of discrimination or harassment, merely 'sufficient' evidence to create the inference of unequal treatment." *Id.,* 399 N.W.2d at 145 (citing *Danz v. Jones,* 263 N.W.2d 395, 399–400 (Minn.1978)).

In this case, Bersie showed at least the "bare essentials" of harassment. Uncontradicted evidence established a number of overtly sexual incidents in addition to the less patently sexual harassment to which Bersie was subjected. Nonetheless, the majority upholds the trial court's finding

---

**1.** The majority refers to Allenbaugh merely as an "employee," presumably relying on Bersie's general testimony that Allenbaugh, Olson and Gilson were "co-employees." However, Harley Horsager testified in his deposition that Allen-baugh was "responsible for" marketing and demonstrations and at least one other employee "reported to" Allenbaugh. At trial Horsager stated specifically that Allenbaugh "supervised one person at the time."

that no prima facie case was established because this harassment did not substantially interfere with Bersie's employment or create an abusive working environment. The majority's analysis, however, focuses not on whether the harassment created an abusive environment, but rather on whether the abusive environment could have a legitimate business justification.[2] This analysis improperly places the burden on the plaintiff to prove, as part of her prima facie case, that no legitimate cause for work problems might exist.

The determination whether harassment created a hostile working environment should properly focus on the nature of the harassment rather than on other work problems. *See, e.g., Moylan v. Maries County,* 792 F.2d 746, 749–50 (8th Cir.1986) (sustained and nontrivial harassment sufficient to create hostile environment); *Katz v. Dole,* 709 F.2d 251, 254–55 (4th Cir.1983) (evidence of a "pattern of personally directed sexual insult and innuendo" sufficient to show offensive and hostile working environment); *Rogers v. E.E.O.C.,* 454 F.2d 234, 238 (5th Cir.1971) (mere utterance of a single racial epithet would not sufficiently affect environment to support a harassment claim), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); *Klink v. Ramsey County,* 397 N.W.2d 894, 901–02 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987) (sporadic exposure to foul language and vulgar materials not directed specifically at the plaintiff not sufficiently severe or pervasive).

Unlike the isolated incident referred to in *Rogers,* Bersie was subjected to repeated sexually derogatory and offensive behavior. Unlike *Klink,* the offensive behavior was directed specifically at her. Where sustained and nontrivial sexual harassment is shown, the degree to which other factors

may have influenced working conditions is irrelevant to the establishment of a prima facie case. Bersie has met her burden of showing that the acts of sexual harassment created an abusive working environment. The record in this case requires such a finding.

The record also establishes the final element of a sexual harassment claim: that Zycad knew or should have known of the harassment. The Supreme Court in *Meritor* declined to state a definitive rule on the question of employer liability for harassment by supervisors which creates a hostile working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, ——, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Under Minnesota law, an employer will be liable if it knows or should have known of the harassment. Minn.Stat. § 363.01, subd. 10a(3); *Continental Can Company, Inc. v. State,* 297 N.W.2d 241, 249 (Minn. 1980).

A Zycad supervisor and a company executive were not only aware of, but perpetrated, offensive conduct. In March 1983 Bersie told her supervisor that she was treated disrespectfully, but he did not investigate her complaint or ask for any examples. According to Bersie, whenever she went to Horsager with a problem, he would tell her to handle it herself. Where acts of harassment are perpetrated by supervisory agents of an employer in the context of the work environment, the fact that no formal complaint was made to Bersie's immediate supervisor should not insulate the employer, particularly if the employer has not established an express policy against sexual harassment or any procedure for resolving harassment claims.[3] *See Meritor,* 477 U.S. at ——, 106 S.Ct. at 2408.

---

2. Although the majority emphasizes Bersie's inability to perform "certain technical tasks," her supervisor never really criticized her work and told her an engineering degree was not required for her job. She was given a bonus just before she left, and company president Offerdahl publicly commended her in July 1983. The record is not at all conclusive on the extent to which her employment problems resulted from gender-related harassment as opposed to "lack of the requisite technical skills." Her supervisor

stated that her work for him at National Computer Systems before they both joined Zycad had been good, timely and accurate and that he was not aware that she had any problems with her co-employees there.

3. According to Zycad president Offerdahl, Zycad has an "unwritten policy" of treating its employees fairly.

The record cannot support the trial court's finding that Bersie failed to establish a prima facie case of sexual harassment based on her sex. The absence of a formal complaint in these circumstances does not relieve Zycad of liability for these acts. Zycad did not advance, and it would be impossible to construct, a legitimate business motivation for the offensive conduct.

A showing of constructive discharge or other adverse economic impact is not required to maintain a sexual harassment suit. *Id.* at ——, 106 S.Ct. at 2406. Nonetheless, the trial court's finding that Bersie failed to establish a prima facie case of sexual harassment likely influenced its finding on constructive discharge, and the case should be remanded for a new trial on that issue as well.