**Bobbie J. KAY, Respondent,**

v.

**PETER MOTOR COMPANY, INC., Appellant.**

**No. C1–91–1251.**

Court of Appeals of Minnesota.

March 31, 1992.

Robert J. Feigh, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for respondent.

Douglas P. Anderson, Rosenmeir, Anderson & Vogel, Little Falls, for appellant.

Considered and decided by CRIPPEN, P.J., and PARKER and MULALLY,* JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

## OPINION

CRIPPEN, Judge.

Appellant challenges the trial court's determination that (1) the company had notice of sexual harassment where the chief executive officer was the perpetrator of the harassment, (2) punitive damages were appropriate given the circumstances of the case, and (3) evidence of the supervisor's treatment of other employees was admissible. We affirm.

## FACTS

Appellant Peter Motor Company, Inc. is a closely held corporation, owned in part by Peter Lillemoe, which primarily sells new and used automobiles. In October 1988, respondent Bobbie Kay began work for Peter Motors as a salesperson. The record reveals that Lillemoe and Kay developed a friendly relationship and that Kay would often share her personal problems with Lillemoe and he would give her advice.

However, the record also reveals a number of incidents which demonstrate another side to their relationship which forms the basis of her complaint. At a sales meeting in March 1990, Lillemoe asked respondent when she last experienced an orgasm. Also in March, Lillemoe displayed a wind-up toy penis to Kay while at work. Sometime in the spring, Lillemoe also participated in collecting money in an attempt to encourage another female employee to shake her breasts. Lillemoe asked respondent for some change for this fund, although he did not fully explain why he was asking for the money.

On May 5, 1990, Lillemoe directed a number of sexually derogatory remarks to Kay. Among other statements, Lillemoe asked, in the presence of other salespersons, when respondent had last been "gang banged." Later in the day, Lillemoe informed Kay that he had been at a party where he had watched a woman suck on her own nipples. Still later in the day, Lillemoe announced

pursuant to Minn.Const. art. VI, § 2.

over the intercom, while customers and employees were present, "Let's have a gang bang." Respondent testified that she told Lillemoe about the presence of customers and he answered "so let them join in." Thereafter Lillemoe held a quarter pitching contest with male salespersons to determine who would get to "have Bobbie" first. Testimony also revealed that Lillemoe referred to Kay as a "fat pig in heat" to another employee and asked "how would you like to jump in the sack with that?" Lillemoe stated that these comments were merely friendly comments which should not be taken out of context.

Respondent's employment terminated on May 16, 1990, after Lillemoe stated that she had mishandled a deal and it would be better if they parted company. Kay never filed a complaint with Peter Motors alleging sexual harassment by Peter Lillemoe while she was employed by the company.

In January 1991, respondent filed suit against the appellant company alleging sexual harassment in violation of Minn. Stat. § 363.01, subd. 41 (1990). After a bench trial, the court found that appellant's chief executive officer and president, Lillemoe, was respondent's supervisor and that he had engaged in harassing conduct which made her employment atmosphere hostile. The court also found that the employer knew or should have known of the harassment and that it failed to take corrective action. The court awarded respondent $38,000 in compensatory damages, $20,593 in attorney fees, and $7,000 in punitive damages. In addition, the court awarded the State of Minnesota a $1,000 civil penalty. Thereafter, the court denied appellant's motion for a new trial.

## ISSUES

1. Did the trial court err as a matter of law when it determined that respondent was entitled to recover damages against her former employer even though she had never formally complained, either orally or in writing?

2. Did the trial court abuse its discretion in concluding that appellant's conduct was willfully indifferent to respondent's

rights and therefore she was entitled to an award of punitive damages?

3. Did the trial court abuse its discretion in admitting testimony about past wrongs when the purpose was to demonstrate the person's knowledge, intent and motive?

## ANALYSIS

■ The denial of a motion for a new trial will not be reversed absent a clear abuse of the trial court's discretion. *Eklund v. Lund*, 301 Minn. 359, 362, 222 N.W.2d 348, 351 (1974). The trial court's findings should not be disturbed if they are reasonably supported by evidence in the record considered as a whole. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 441 (Minn.1983). This deference is especially strong in employment discrimination cases. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 721 (Minn.1986). However, questions of law are reviewed de novo. *Western Insulation Servs., Inc. v. Central Nat'l Ins. Co.*, 460 N.W.2d 355, 357 (Minn. App.1990).

### 1.

The central issue in this appeal concerns the legal determination that the appellant company had sufficient notice of the alleged sexual harassment. Appellant contends that because respondent did not complain there was no reason for appellant to know that sexual harassment was occurring and it did not have a proper opportunity to address the harassment. Respondent contends the company had notice because the company's president and chief executive officer was the harasser.

The Minnesota Supreme Court in *McNabb v. Cub Foods*, 352 N.W.2d 378 (Minn.1984), stated that the liability inquiry should focus on whether the employer knew or should have known about the harassment:

> This case is like *Continental Can Co. v. State*, 297 N.W.2d 241 (Minn.1980). *Continental Can* established employer culpability if the employer "knew or should have known" that sexual harass-

ment was taking place. 297 N.W.2d at 249. *See also Hussa v. Employment Sec. Dept.*, 34 Wash.App. 857, 664 P.2d 1286 (1983). It involved management acceptance of an environment of sexual harassment. *See, e.g., Heelan v. Johns-Manville Corp.*, 451 F.Supp. 1382, 1390 (D.Colo.1978).

*McNabb*, 352 N.W.2d at 382. The court found that Cub Foods knew about the harassment because the victim had communicated her problems to her immediate supervisor, whom the court deemed to be "management" for the purpose of imputing knowledge to the corporation. *Id.* at 383; *see also Tretter v. Liquipak Int'l, Inc.*, 356 N.W.2d 713, 715 (Minn.App.1984) (imputing supervisor's knowledge of harassment to employer).

We observe that the *McNabb* court adopted the trial court's conclusion that the victim "was not required to formally complain of sexual harassment of which the employer had knowledge." *McNabb*, 352 N.W.2d at 383; *see also Bersie v. Zycad Corp.*, 417 N.W.2d 288, 291 (Minn.App. 1987) (employer liability may be created through either actual knowledge of incidents or the fact that incidents were so obvious or pervasive employer should have known of alleged misconduct), *pet. for rev. denied* (Minn. May 5, 1988).

■ Despite this authority, appellant contends a victim of sexual harassment should not be allowed to recover absent a complaint to the employer. No reported case has required a complaint where the employer's grievance procedures do not outline a mandatory complaint procedure. *See Bersie*, 417 N.W.2d at 294 (Lansing, J., dissenting) (employer not entitled to complaint on harassment perpetrated by supervisors, "particularly if the employer has not established an express policy against sexual harassment or any procedure for resolving harassment claims") (citing *Meri-*

*tor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72–3, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986)). *Compare Heaser v. Lerch, Bates & Assocs., Inc.*, 467 N.W.2d 833, 835 (Minn.App.1991) (where manager commits sexual harassment, such knowledge is imputed to employer and absent specific, detailed company policy, victim not required to make further complaints) *with Weaver v. Minnesota Valley Lab., Inc.*, 470 N.W.2d 131, 135 (Minn.App.1991) (where company has written reporting policy, victim had duty to complain to identified individual in order to preserve sexual harassment claim against company).[1] In this case the employer had no express grievance reporting procedure and no policy for reporting wrongful harassment. Moreover, the employer has shown no training program or policy announcements which demonstrate a sincere desire to receive harassment complaints and respond to them.

The *McNabb* court also rejected an employer's argument that although the supervisor knew what was happening, he did not know it was "sexual harassment." *McNabb*, 352 N.W.2d at 383. The statute and prior harassment decisions permit objective characterization of wrongful harassment without reference to the victim's pain, outrage or complaints. Minn.Stat. § 363.-01, subd. 41 (1990); *see Gradine v. College of St. Scholastica*, 426 N.W.2d 459, 465 (Minn.App.1988) (Foley, J., dissenting) (determination of whether acts constitute sexual harassment involves an objective standard), *pet. for rev. denied* (Minn. Aug. 24, 1988).

We have no doubt that efforts of respondent to complain would add compulsion for a finding that Lillemoe knew his conduct was wrongful. Nonetheless, there was abundant evidence here to support the trial court's findings that Lillemoe's actions were patently intimidating, hostile and of-

---

**1.** We also note that there is no reason to require an employee to complain to their supervisor when the supervisor is the harasser because the employee would not likely have a "reasonable expectation of assistance." *True–Stone Corp. v. Gutzkow*, 400 N.W.2d 836, 838 (Minn.App.1987); *see also Dura Supreme v. Kienholz*, 381 N.W.2d 92, 95 (Minn.App.1986) (no expectation of assistance where supervisor viewed harassment as "joke"); *Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662, 664 (Minn.App.1985) (employer deemed to have knowledge of continuing harassment where supervisor was source of many problems).

fensive; and that by reason their "nature, intensity, location and object" they would have devastating impact.

Appellant cites *Klink v. Ramsey County*, 397 N.W.2d 894 (Minn.App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987), as authority that Lillemoe's comments and actions were not so intrinsically offensive as to give Peter Motors knowledge of the harassment. *Klink* must be distinguished as it involved the use of foul language and the display of obscene materials in private places. *Id.* at 902. The *Klink* court concluded that in the circumstances of that case

> there was no realistic and reasonable way for the employer to know of the existence of sexual harassment unless Klink called it to the employer's attention.

*Id.* In contrast, the more personalized and derogatory nature of Lillemoe's public comments is patently offensive such that an employer should reasonably and realistically conclude that the actions constituted sexual harassment.

Since there was no specific sexual harassment policy at Peter Motors requiring respondent to report sexual harassment to the employer, she was not required to file a complaint. In addition, because Lillemoe's actions were patent acts of sexual harassment, his employer knew or should have known that Lillemoe's conduct constituted wrongful harassment. The trial court's finding of liability was not erroneous.

### 2.

Appellant also challenges the trial court's award of punitive damages pursuant to Minn.Stat. §§ 363.14, subd. 2, 363.-071, subd. 2, and 549.20 (1990). Appellant contends that punitive damages were inappropriate in this case because (1) as appellant assesses the evidence, the acts of harassment occurred on a single day and (2) even though Lillemoe may have personally acted with willful indifference, there is no evidence that the company acted with willful indifference.

■ A party must prove that a defendant's acts showed a willful indifference to the rights or safety of others before punitive damages may be awarded. Minn.Stat. § 549.20, subd. 1; *see Peterson v. Sorlien*, 299 N.W.2d 123, 129 (Minn.1980) (punitive damages appropriate if plaintiff proves defendant "acted willfully, wantonly and maliciously"), *cert. denied*, 450 U.S. 1031, 101 S.Ct. 1742, 68 L.Ed.2d 227 (1981). "Willful indifference" does not imply an intent to harm the plaintiff, but a knowing disregard for the plaintiff's rights or safety. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 381 (Minn.1990). A punitive damage award should not be disturbed on appeal unless the award is so excessive that it is unreasonable. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn.1980).

■ Appellant has failed to demonstrate that the award of punitive damages as authorized by statute was unreasonable. First, the record supports the trial court's finding that there were multiple acts of harassment that occurred over a period of months. Moreover, duration is simply one of the factors to be considered. *See* Minn. Stat. § 549.20, subd. 3; *cf. Kienholz*, 381 N.W.2d at 93–95 (single remark can constitute sexual harassment). Second, the knowledge of Lillemoe as both employee and officer was properly imputed to the corporation by the trial court. Lillemoe, as chief executive officer, failed to bring under control his own conduct, which he knew was offensive and knew or should have known constituted sexual harassment. *See Tretter*, 356 N.W.2d at 716 (punitive damages awarded because harassment continued for six months and employer did not take corrective action). Finally, the trial court properly considered the factors listed in Minn.Stat. § 549.20, subd. 3. The court's order made findings regarding Lillemoe's knowledge that respondent was entitled to a workplace free from harassment, Lillemoe's deliberate disregard for her rights, the specific occasions when harassment occurred, and the financial condition of the company.

### 3.

Appellant claims that the introduction of testimony from two former employees at

**486**

Peter Motor Company was an attempt by respondent to use past wrongs to prove current conduct. Such a use would violate Minn.R.Evid. 404 which prohibits the use of character evidence to prove current behavior. However, character evidence may be used if offered to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Minn.R.Evid. 404(b).

■ Appellant relies heavily on *Kresko v. Rulli*, 432 N.W.2d 764 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 31, 1989). This reliance is misplaced. In *Kresko*, the court upheld the exclusion of testimony offered by the victim to demonstrate that the employer's past relationships with other women showed a pattern or habit, and specifically found that none of the exceptions present in Rule 404(b) were at issue in the case. *Id.* at 768–69. By contrast, the trial court in this case determined that the offered testimony of other employees was not received for the purpose of showing that Lillemoe acted similarly toward respondent. Rather, it was offered to demonstrate Lillemoe's intent to make harassing comments to Kay, his knowledge of the offensive nature of his remarks and the hostile working environment he created by making such remarks, as well as his motive to make the remarks. Because of this, the trial court's limited use of this testimony was not erroneous.

## DECISION

The trial court properly determined that Peter Motor Company should be held liable for Peter Lillemoe's acts of sexual harassment. In addition, the trial court's award of punitive damages was not unreasonable and the admission of testimony from other employees was not an improper use of character evidence.

Affirmed.