*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1347**

In re the Marriage of: Timothy Michael Kopp, petitioner,
Respondent,

vs.

Christina Ann Burton,
Appellant.

**Filed April 4, 2016
Affirmed
Reyes, Judge**

Stearns County District Court
File Nos. 73FA0816429; 73FA138421; 73FA153333

John Lund, Lund Law P.A., St. Cloud, Minnesota (for appellant)

Timothy Kopp, Maple Grove, Minnesota (pro se respondent)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant-mother argues that the district court erred by (1) awarding respondent-father sole legal and sole physical custody of the parties' minor child; (2) requiring that her parenting time be supervised; (3) adopting the guardian ad litem's report verbatim; and (4) granting father's request to change the minor child's surname. We affirm.

**FACTS**

Appellant-mother Christina Ann Burton and respondent-father Timothy Michael Kopp were married on July 5, 2008. On August 28, 2008, the parties were involved in a domestic dispute. As a result, mother obtained an order for protection (OFP) against father, and father was adjudicated guilty of domestic assault. Mother subsequently had the OFP extended by 50 years. Father filed for divorce on September 19, 2008.

The parties had a child who was born on January 30, 2009. Father was awarded supervised visitation in May 2009. Father's supervised visitation took place at the St. Cloud YMCA. The YMCA supervisors reported difficulty dealing with mother and that mother repeatedly cancelled visits.

The parties' marriage was dissolved by dissolution decree on December 30, 2009. In July 2010, the parties hired a private custody evaluator to provide recommendations to the court regarding physical and legal custody of the parties' minor child. The private custody evaluator recommended that mother be awarded sole legal and sole physical custody of the child but that, over time, father's parenting time increase and transition from supervised to unsupervised. On September 23, 2011, the court appointed a parenting-time supervisor for father's parenting time. The parenting-time supervisor resigned from this position on November 6, 2011, citing concerns about mother.[1] On

---

[1] The parenting-time supervisor's reasons for resignation included personal safety concerns, mother's failure to comply with the rules and conditions of the supervised-visitation program, mother's threats to report the parenting-time supervisor to the state of Minnesota, and mother's failure to bring the minor child to scheduled visits. We note that the parenting-time supervisor was not the only person involved in the case who ultimately refused to work with the parties due to mother's behavior.

November 30, 2011, the court appointed a guardian ad litem (GAL). The GAL opined that sole legal and sole physical custody should be awarded to mother.

On January 22, 2013, the court awarded mother sole legal and sole physical custody of the parties' minor child but granted father unsupervised visitation every other weekend. The court also discharged the GAL. Shortly thereafter, mother requested reconsideration of the custody arrangement. Due to mother's concerns, the court filed a temporary emergency order on January 31, 2013, and appointed a parenting consultant on February 21, 2013. The court subsequently granted father unsupervised parenting time on weekends until a transitional schedule was prepared by the parenting consultant.

On March 22, 2013, father filed a motion requesting that the court hold mother in contempt of court for denying father his court-ordered parenting time. The district court held a hearing on April 18, 2013. On June 24, 2013, the district court granted father's contempt motion. The parenting consultant withdrew from the case on August 6, 2013, and recommended that a new GAL be appointed. On August 22, 2013, father again filed a motion requesting that the court hold mother in contempt for denying father his court-ordered parenting time.[2] Mother filed a responsive affidavit on September 4, 2013, in which she attempted to provide explanations for the missed visits.

A new GAL was appointed, and on August 5, 2014, the GAL filed her first report with the court, to which she filed an addendum on August 21, 2014. Both reports recommended that sole legal and sole physical custody be transferred to father. The court

---

[2] Initially, the court reserved ruling on father's second contempt motion and later denied father's motion in its order filed on October 3, 2014.

4

held an evidentiary hearing on September 11, 2014. Following the GAL's testimony, the court issued an order from the bench transferring sole legal and sole physical custody of the minor child to father and granting mother supervised parenting time. The court also granted father's request to change the minor child's surname. On October 3, 2014, the court filed a written order memorializing its order from the bench.

Mother filed an appeal, and the parties subsequently appeared before the district court to discuss mother's motion to stay the October 3 custody order pending appeal. At the hearing, mother requested a second evidentiary hearing on father's custody-modification motion, contending that she did not have the opportunity to present her case at the prior hearing. The district court denied mother's request for a stay pending appeal but granted mother's request for a second evidentiary hearing. Mother voluntarily dismissed her initial appeal, and the second evidentiary hearing was held on April 2 and 3, 2015. Several witnesses testified. On June 26, 2015, the court filed an order, which, in large part, reaffirmed the findings and conclusions contained in its order filed on October 3. This appeal follows.

## D E C I S I O N

### I. The district court did not abuse its discretion by modifying custody.

Mother asserts that the district court abused its discretion by granting father's motion to modify custody.[3] We disagree.

---

[3] Mother failed to cite legal authority in support of this argument. We therefore need not address it. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971). However, because mother's argument implicates the best interests of the child, we address the merits of the decision to modify custody.

5

Our review of a custody determination is limited to whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). The supreme court has set forth a two-stage process that is used in custody-modification proceedings. *Lewis-Miller v. Ross*, 710 N.W.2d 565, 569 (Minn. 2006). First, "the district court, in consideration of affidavits submitted in support of the motion for modification, reviews the documents and schedules a hearing if the movant alleges fact which, if true, would justify modification." *Id.* "Whether a party makes a prima facie case to modify custody is dispositive of whether an evidentiary hearing will occur on the motion." *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007). Generally, in contested cases, child custody cannot be modified without an evidentiary hearing. *E.g.*, *Clark v. Clark*, 358 N.W.2d 441 (Minn. App. 1984) ("[A] trial court may not modify a custody award absent an evidentiary hearing in which witnesses may be cross-examined.") (quotation omitted)).

Following an evidentiary hearing, the district court may grant a motion to modify custody based on endangerment if the court finds that (1) there has been a change in circumstances; (2) modification is necessary to serve the child's best interests; (3) the child's present environment endangers the child's physical health, emotional health, or emotional development; and (4) the benefits of the modification outweigh the detriments with respect to the child. Minn. Stat. § 518.18(d)(iv) (2014). Mother takes issue with elements two through four: the best interests of the child, endangerment, and the benefits versus detriments of modification. We address each element in turn.

6

### A.    The best interests of the child

The best interests of the child are determined using the factors listed in Minn. Stat. § 518.17, subd. 1 (2014).[4] Specifically, the district court considers (1) the wishes of the parents regarding custody; (2) the preference of the child, if the child is of sufficient age to express a preference; (3) who acts as the child's primary caretaker; (4) the intimacy of the relationship between the child and each parent; (5) the child's interaction and interrelationship with the parents and others who may affect the child's best interests; (6) the child's adjustment to home, school, and community; (7) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; (8) the permanence as a family unit of the existing or proposed custody arrangement; (9) the mental and physical health of the individuals involved; (10) the capacity of the parties to give the child love, affection, and guidance; (11) the child's cultural background; (12) the effect on the child by the actions of an abuser; and (13) the ability of each parent to encourage and permit frequent and continuing contact with the other parent. *Id.*

The district court found that mother was the child's primary caretaker, which weighed in her favor. The district court determined that the child was too young to

---

[4] A substantive amendment to Minn. Stat. § 518.17, subd. 1, was made during the 2015 legislative session. 2015 Minn. Laws ch. 30, art. 1, § 3. Because the relevant amendments do not specify an effective date, the amendments became effective on August 1, 2015. *See* Minn. Stat § 645.02 (2014). We therefore apply the 2014 version of the statute, which was in effect when the district court issued its June 26, 2015 order. *See Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, courts apply the law in effect at the time they make their decision, unless doing so would alter vested rights or result in manifest injustice).

7

express a preference, both parents have an intimate relationship with the child, and both parents desire to have sole legal and sole physical custody. Thus, these three factors were neutral. The remaining best-interests factors, according to the district court, weighed in favor of father. Therefore, the district court concluded that modifying custody to award father sole legal and sole physical custody was in the minor child's best interests.

The district court's findings are supported by the record. The GAL addressed these best-interests factors in detail. The GAL's analysis and recommendations support the district court's conclusion that the best-interests factors favor a custody modification. Furthermore, the district court expressly stated in its June 26, 2015 order that it found the GAL's account "fair and credible," that her "analysis was sound," and her "recommendations remain appropriate and in the [c]hild's best interests." We defer to the district court's credibility determinations. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) ("Deference must be given to the opportunity of the trial court to assess the credibility of the witnesses."). Accordingly, the second element is met.

### B. Endangerment

Although the concept of endangerment is imprecise, this element requires that the moving party demonstrate a significant degree of danger. *Ross v. Ross*, 477 N.W.2d 753, 756 (Minn. App. 1991). This court has "recognized [that] indications of danger to a child's well-being and development include poor school performance . . . and consistent denial of visitation." *Lilleboe v. Lilleboe*, 453 N.W.2d 721, 724 (Minn. App. 1990). The district court "determined that the [c]hild's emotional health was endangered, or at least significantly impaired, while residing with [mother]." Additionally, the district court

8

found that mother "impaired the emotional development of the [c]hild." Specifically, the court found that the child struggled academically while in mother's care and that mother "frequently and unjustifiably denied an extensive amount of visitation time to [father] without any reasonable justification." These findings are supported by the record.

The child's performance in school was deficient while he was in mother's care. The child began attending kindergarten on September 18, 2014, shortly after he was transferred to father's care. The GAL met with the child's teacher on January 15, 2015 to discuss the child's performance at school. The teacher reported that, at the beginning of the school year, the child presented as quite shy and was unsure about proper boundaries with other children. The teacher also reported that initially the child demonstrated little knowledge of basic concepts, such as shapes and colors, and did not seem like he previously had been exposed to much educational enrichment. By the time of the January 15 visit, however, the teacher stated that the child was quickly understanding concepts, had acquired friends, and was invited to their birthday parties.

Additionally, mother repeatedly attempted to deny father visitation and was not cooperative in facilitating father's parenting time. Following the court's March 8, 2013 order granting father unsupervised visitation, mother repeatedly denied father his scheduled visitation. The August 5, 2014 report prepared by the GAL also discussed mother's attempts to limit father's contact with the child. Specifically, the GAL noted mother's frequent attempts to have father cited for OFP violations as well as the

9

suspicious timing and nature of the child's illnesses.[5]  Moreover, a report filed by the parties' parenting consultant dated April 15, 2011, contained indications that mother denied father his parenting time.  The report noted the YMCA supervisor's comments that, due to mother's inflexibility, creating a visitation schedule was an on-going struggle.  The YMCA supervisor also reported that mother often cancelled visits and that rescheduling missed visits was difficult due to mother's insistence that the visits occur within extremely limited time frames.  Thus, the third element is met.

C.    Benefits versus detriments of modification

The district court determined that "extensive evidence and testimony supported [father's] claim that the environment that he was able to provide for the [c]hild would significantly outweigh any harm caused to the child by changing residences."  The record supports this determination.  Testimony and reports by the GAL demonstrate that father was able to provide a safe and stable environment where the minor child could thrive.  The record also evidences that, for the reasons previously discussed, mother's home presented risks to the minor child's development.  Therefore, the fourth element is satisfied.  Accordingly, we conclude that the district court did not abuse its discretion by granting father's motion to modify custody.

---

[5] One OFP violation occurred on March 15, 2015, during mother's supervised parenting time.  Father was arrested at the supervised visitation center for violating the OFP.  Mother's behavior with respect to this incident is troubling.  Both the GAL and supervisor expressed concern about mother's failure to appreciate the potential distress that this incident could have caused the child.  Furthermore, mother attempted to use this incident to support a custody modification, which the court denied.  The GAL reported that this behavior reflected "the same obsessive pursuit of [OFP] violations . . . in order for [mother] to eliminate [father] from his [child's] life."

Mother also argues that father did not presented a prima facie case to modify custody and therefore was not entitled to an evidentiary hearing.[6] But mother is asserting this argument for the first time on appeal. Indeed, mother requested her own evidentiary hearing, which the district court granted. Therefore, mother is precluded from challenging the propriety of holding such a hearing on appeal. *Thiele v. Stitch*, 425 N.W.2d 580, 582 (1980) (stating that appellate review is generally limited to the issues and theories presented to and considered by the district court). Moreover, because we conclude that the district court did not abuse its discretion by modifying custody, and particularly because we affirm the district court's determination that the child was endangered in mother's custody, even if we were to assume the district court erred in holding a hearing on father's motion, that error was harmless. *See* Minn. R. Civ. P. 61. As a result, we decline to further address mother's argument on the prima facie case.

## II. The district court did not abuse its discretion in establishing mother's parenting time.

Mother asserts that there was no evidence presented that supervised parenting time was necessary to protect the child.[7] We disagree.

---

[6] Mother asserts that father never filed a formal motion requesting sole legal and sole physical custody of the child. While father never filed a formal motion, we conclude that the issue was litigated by consent. Minn. R. Civ. P. 15.02. There is ample evidence in the record demonstrating that mother was on notice that the court was considering transferring custody of the child to father. Over the course of these proceedings, the parties developed a practice of sending correspondence to the court rather than filing formal motion papers. Mother, too, followed this practice. We nevertheless urge parties to file, and district court judges to require, formal motion papers.

[7] Mother also asserts that the district court erred by failing to make a *specific finding* that supervised parenting time was necessary to protect the child. We need not address this argument, as mother failed to adequately brief or cite authority in support of it and

11

The district court has broad discretion in determining parenting-time issues and will not be reversed absent an abuse of that discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). "A district court abuses its discretion when evidence in the record does not support the factual findings, the court misapplied the law, or the court settles a dispute in a way that is against logic and the facts on record." *Foster v. Foster*, 802 N.W.2d 755, 757 (Minn. App. 2011) (quotation omitted); *see also Pikula*, 374 N.W.2d at 710. Minn. Stat. § 518.175, subd. 1(a) (2014), provides that "the court shall, upon the request of either parent, grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." But "[parenting-time] rights are not absolute and are to be exercised only when in the best interest[s] of the child." *Manthei v. Manthei*, 268 N.W.2d 45, 45 (Minn. 1978). To that end, Minn. Stat. § 518.175, subd. 1(b) (2014), provides:

> If the court finds, after a hearing, that parenting time with a parent is likely to endanger the child's physical or emotional health or impair the child's emotional development, the court shall restrict parenting time with that parent as to time, place, duration, or supervision and may deny parenting time entirely, as the circumstances warrant. The court shall consider the age of the child and the child's relationship with the parent prior to the commencement of the proceeding.

---

therefore waives this issue on appeal. *Schoepke*, 290 Minn. at 519-20, 187 N.W.2d at 135. Moreover, the district court was not required to make a specific finding that supervised parenting time was necessary to protect the child because the district court's order as a whole shows that it took into consideration the relevant statutory factors. *Berthiaume v. Berthiaume*, 368 N.W.2d 328, 332 (Minn. App. 1985).

"Denial of access to a parent and efforts to paint a parent in a poor light have the potential to endanger a child's emotional health or impair his emotional development." *Newstrand v. Arend*, 869 N.W.2d 681, 691 (Minn. App. 2015) (citing *Grein v. Grein*, 364 N.W.2d 383, 385-86 (Minn. 1985)); *Clark v. Bullard*, 396 N.W.2d 41, 44 (Minn. App. 1986) ("[T]he child was harmed by being denied visitation with his father for six months."); *see also Meier v. Connelly*, 378 N.W.2d 812, 815-16 (Minn. App. 1985) (holding that the trial court did not abuse its discretion by ordering supervised visitation until husband posted bond to ensure return of child from unsupervised visitation when husband had consistently denied mother access to the child). As previously discussed, mother repeatedly denied father access to the minor child and attempted to paint father in a poor light. Thus, mother's behavior endangered the minor child's emotional health and development, and the district court did not abuse its discretion by requiring that mother have supervised parenting time.

### III.    The district court did not err by adopting large portions of the GAL's report in its order.

Mother next argues that the district court's verbatim adoption of the GAL's report shows a lack of independent judgment by the court. We are not persuaded.

First, mother fails to cite any legal authority to support her assertion that a wholesale adoption of a GAL's report is error. Mother cites caselaw which cautions against a court's adoption of one party's findings and conclusions. *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn. App. 1992); *Bersie v. Zycad Corp.*, 417 N.W.2d 288, 292 (Minn. App. 1987), *review denied* (Minn. May. 5, 1988); *Sigurdson v. Isanti Cty.*, 408

13

N.W.2d 654, 657 (Minn. App. 1987), *review denied* (Minn. Aug. 19, 1987). But that did not happen; here, instead of adopting findings proposed by an interested party, the district court adopted findings proposed by a neutral GAL. And, as mother notes, even the cases she cites provide that "the verbatim adoption of a party's proposed findings and conclusions of law is not reversible error per se." *Bliss*, 493 N.W.2d at 590; *Bersie*, 417 N.W.2d at 292; *Sigurdson*, 408 N.W.2d at 657.

Furthermore, while the district court extensively quoted from the GAL's report, it did not simply adopt the entire report verbatim. While it is true that the court used applicable sections of the report to support its best-interests analysis, the court's exercise of independent judgment is evident throughout the June 26, 2015 order. For example, the court stated that it based its decision on the GAL's report as well as "other testimony at the hearings held in this matter, combined with the [c]ourt's thorough review of the extensive record of evidence and testimony presented in this case to date." Moreover, in the conclusion of its order, the court reiterated that it reached its decision "after a full review of the long record and testimony presented to the [c]ourt to date." Thus, the district court's order itself refutes mother's claim that the court failed to exercise independent judgment and simply adopted the GAL's report.

Mother also argues that the district court did not review the record or properly weigh the evidence before it. But the district court's factual findings are adequately supported by the record, and the court's order clearly demonstrates that it appropriately weighed the evidence before it. The district court noted its extensive history with the case and that it did not reach its decision lightly "or without serious and extensive

14

consideration of the entire record." And to the extent mother is challenging the court's

credibility determinations, her claims are unavailing. *See Sefkow*, 427 N.W.2d at 210.

**IV.    The district court did not abuse its discretion by granting father's request to change the child's surname.**

Finally, mother asserts that the district court's order changing the child's surname

must be reversed because the change was not discussed, there was no testimony regarding

the change, and the court's order contains no findings addressing the change.[8] We are

not persuaded.

"We review a district court's grant of a request to change a child's name for abuse

of discretion." *Foster*, 802 N.W.2d at 756. As previously noted, "[a] district court

abuses its discretion when evidence in the record does not support the factual findings,

the court misapplied the law, or the court settles a dispute in a way that is against logic

and the facts on record." *Id.* at 757 (quotation omitted). Minn. Stat. § 259.10, subd. 1

(2014), sets forth the initial procedure that a parent must follow to request a name change

for a minor child. The section also provides that a minor child's name must not be

changed "without both parents having notice of the pending application for change of

name, whenever practicable, as determined by the court." *Id.* "[W]hen parents cannot

agree on the surname to be given to their child . . . the best interests of the child must

control the resolution of the dispute." *Jacobs v. Jacobs*, 309 N.W.2d 303, 304 (Minn.

---

[8] Mother contends that father never formally requested that the minor child's name be changed. But the record demonstrates that mother had adequate notice that the issue was before the court and that she even addressed the issue in a letter to the court. The issue therefore was litigated by consent. Minn. R. Civ. P. 15.02.

1981).  There are five non-exclusive factors courts consider when determining whether a proposed name change is in a child's best interests.  *In re Saxton*, 309 N.W.2d 298, 301 (Minn. 1981).  The *Saxton* factors are: (1) how long the child has had the current name; (2) any potential harassment or embarrassment the present or proposed name might cause; (3) the child's preference; (4) the effect of the change on the child's relationship with each parent; and (5) the degree of community respect associated with the present and proposed names.  *Id.*

Neither the district court's October 3, 2014 order nor the June 26, 2015 order explicitly addresses the *Saxon* name-change best-interests factors.  Nevertheless, the name change was justified under *Saxon*.  *Berthiaume*, 368 N.W.2d at 332 (concluding that the district court's order as a whole took into consideration the relevant statutory factors when the order did not explicitly discuss them); *see also Grein*, 364 N.W.2d at 387 (holding that remand is unnecessary when it is clear from the record that on remand, the trial court would "undoubtedly make findings that comport with the statutory language").  On this record, two factors, the child's preference and the community respect associated with each name, are neutral.  The child was six years old on July 26, 2015, and thus was known by his prior surname for six years.  But father petitioned the court to change the child's name when the child was only four.  Any potential harassment or embarrassment the child might have suffered is mitigated by the name change, as the child's name was changed to include his now-custodial parent's surname, reducing possible confusion.  Lastly, the name change had the effect of establishing father's paternal relationship to the minor child.  *See Robinson v. Hansel*,

16

302 Minn. 34, 35, 223 N.W.2d 138, 140 (1974) (discussing society's "strong interest in the preservation of the parental relationship"). Accordingly, because the applicable *Saxon* factors indicate that the name change was in the child's best interests, we conclude that the district court did not abuse its discretion in ordering the name change.

**Affirmed.**