**Heather CLARK, Relator,**

v.

**K–MART STORE # 3059, Commissioner of Economic Security, Respondents.**

**No. C6–85–491.**

Court of Appeals of Minnesota.

Aug. 20, 1985.

Katherin G. Hadley, Southern Minnesota Regional Legal Services, St. Paul, for relator.

K-Mart Store No. 3059, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

This is an appeal from a determination by the Commissioner of Economic Security that relator voluntarily terminated her em-

ployment without good cause attributable to her employer. We reverse.

## FACTS

Relator began working as a part-time sales clerk for K-Mart Store No. 3059 in March 1984. On October 17, 1984 she submitted written notice of her intent to resign, stating:

I, Heather Clark, do hereby give notice that on the 7th of November, 1984 I will be terminating my employment with K-Mart Corp. for the following reasons:

\* \* \* \* \* \*

3. SEXUAL HARASSMENT by male employees, even after I have told them "KEEP YOUR HANDS OFF ME" and leave me alone.

During the three weeks between relator's notice of resignation and her actual resignation, her employer failed to take any action regarding relator's allegations of harassment.

Following her resignation, relator was denied unemployment benefits when a claims deputy determined that she had voluntarily discontinued her employment. An appeals referee affirmed, finding that relator had been sexually harassed upon several occasions by the assistant manager, but that "the employer did not know that [relator] was being sexually harassed at any time prior to the day she resigned." The referee concluded that relator had voluntarily terminated her employment without good cause on November 6, 1984.

A Commissioner's representative agreed, stating:

First, in view of the unconditional nature of her resignation notice, we are not convinced that the employer had a duty pursuant to Minnesota Statute § 268.09, Subdivision 1(1), to take corrective action after its submission. Second, even if we accepted the claimant's contention that her resignation did not become effective until her last day of work, we would, nevertheless, find that the notice as contained in her resignation letter was defective insofar as she did not provide the

employer with any specific information concerning the nature of the harassment, the extent of the harassment or the names of the harassers. Before an employer can reasonably be expected to take appropriate action in sexual harassment cases, the employee has the affirmative duty to set forth with some specificity the incidents complained of. Herein, the claimant's sole communication to the employer regarding the alleged harassment consisted of the vague conclusionary statement contained in her resignation letter and as such clearly did not provide the employer with legally sufficient notice as contemplated by the above-cited statute.

Relator contests the Commissioner's conclusions.

## ISSUES

1. Did relator voluntarily terminate her employment without good cause when she informed her employer in a letter of resignation of the existence of sexual harassment and when the employer subsequently failed to take any action to prevent further harassment?

2. Was relator required to specifically state in her notice the nature and extent of the sexual harassment or the names of the alleged harassers?

## ANALYSIS

I.

Minn.Stat. § 268.09 (1984) disqualifies an employee from receiving unemployment benefits if the employee voluntarily discontinues his employment without good cause attributable to his employer. This statute provides in part:

A separation shall be for good cause attributable to the employer if it occurs as a consequence of sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other conduct or communication of a sexual nature when: (1) the employee's submission to such conduct or communi-

cation is made a term or condition of the employment, (2) the employee's submission to or rejection of such conduct or communication is the basis for decisions affecting employment, or (3) such conduct or communication has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment *and the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action.*

Minn.Stat. § 268.09, subd. 1(1) (emphasis supplied). Thus, as stated in *McNabb v. Cub Foods*, 352 N.W.2d 378 (Minn.1984):

[T]he statute requires that two elements be satisfied: first, that the employer knew or should have known of the existence of harassment; second, that the employer failed, despite that knowledge, to take timely and appropriate action.

*Id.* at 381–82.

In this instance, it is undisputed that the employer failed to take any action regarding relator's allegations of harassment; however, the employer claims that since relator failed to notify her employer prior to her resignation of the existence of the harassment, no corrective action was required.

We disagree. The referee specifically found, and the Commissioner agreed, that the date of relator's termination was November 6, 1984. Three weeks prior to that date, in her notice of resignation, relator informed her employer of the sexual harassment. It is undisputed that neither the personnel director nor relator's supervisor or assistant manager took any action within those three weeks, and relator testified that the harassment continued during that time.

■ The Commissioner concluded that because relator's notice of resignation was unconditional, the employer had no duty to correct the problem. Submission of a notice of resignation, however, does not necessarily determine the date of an employee's termination. *See Armar Corp. v. Malinski*, 362 N.W.2d 10, 12 (Minn.Ct.App.

1985) (employer did not accept employee's resignation; later acceptance constituted involuntary termination); *Miller v. Minnetonka Health Care Center, Inc.*, 359 N.W.2d 684 (Minn.Ct.App.1984) (employee terminated his employment on December 19, but notified his employer of his intent to resign on December 21); *c.f. Seacrist v. City of Cottage Grove*, 344 N.W.2d 889, 892 (Minn.Ct.App.1984) (when a letter of resignation is unequivocal, an employer may rely on the employee's word). Again we emphasize that the referee found relator's date of termination to be November 6. Prior to that date she remained an employee of the employer.

■ Upon receipt of relator's letter, the employer had the opportunity to take some action. Relator had not actually terminated her employment at that point, and the employer was obligated to respond to the allegations in some manner if it wished to claim relator's termination was without cause.

## II.

■ The Commissioner also determined that even if relator's resignation was not effective until November 6, her prior allegations of sexual harassment were not sufficiently specific. However, the statute merely requires that the employer know of "the existence" of the harassment. Minn. Stat. § 268.09, subd. 1(1). Further, in this instance the assistant manager, who performed first-level supervisory functions, was the offender, and clearly had knowledge of the situation. *McNabb* suggests that this knowledge may be imputed to the employer. *McNabb*, 352 N.W.2d at 383. Finally, *McNabb* indicates the type of actions which might be taken by an employer upon learning of sexual harassment:

An employer could disseminate an anti-harassment policy, transfer the employee to another shift, or take disciplinary action or threaten such action against offending employees.

*Id.* at 384. Here the employer, without knowing the nature or extent of the harass-

ment or the name of the offender, could have distributed an anti-harassment policy, asked relator if she wished to change shifts, or taken some other action. The employer, by failing to take any action whatsoever upon learning of the harassment, waived its claim that relator voluntarily quit without good cause. As stated by *McNabb*, "[a]n employer must act to prevent and correct harassment *when it becomes aware of the problem.*" *Id.* at 384 (emphasis supplied).

## DECISION

Relator voluntarily discontinued her employment with good cause attributable to the employer. The decision of the Commissioner is reversed.