**Richard L. GRADINE, Respondent,**

v.

**COLLEGE OF ST. SCHOLASTICA, Relator,**

**Commissioner of Jobs and Training, Respondent.**

**No. C4–88–326.**

Court of Appeals of Minnesota.

July 5, 1988.

Review Denied Aug. 24, 1988.

---

Thomas J. Bieter, Duluth, for Richard L. Gradine.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for College of St. Scholastica.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Relator-employer College of St. Scholastica ("college") seeks review of a determination that respondent Richard Gradine, a former college employee, did not sexually harass a fellow employee. We agree with the Department of Jobs and Training that Gradine's actions did not constitute sexual harassment, and therefore affirm the department's award of unemployment benefits to Gradine.

## FACTS

In March 1987, Gradine began working for the college as an assistant plant supervisor. Gradine's responsibilities included hiring and supervising a group of students who worked for the college during the summer. Gradine assigned one of these students, Ann Marie Donlin, special duties, and when other students complained that Donlin was receiving preferential treatment, Gradine's supervisor transferred Donlin to a campus switchboard position. After Donlin's transfer, Gradine was no longer her supervisor.

Prior to Donlin's transfer, Gradine had been experiencing recurring dreams in which Donlin was driving her car and became involved in an accident with an animal on the road. Gradine was worried about these dreams, and with Donlin's permission, he installed a set of game whistles on her car.

On July, 19 or 20, 1987, after Donlin had been transferred to the campus switchboard position, Gradine wrote her a 2–page letter, stating that he had begun experiencing strong personal feelings of affection

and love for her. On July 21, 1987, Gradine asked Donlin to meet him at an off-campus restaurant after work. At the restaurant, Gradine gave Donlin his letter, and repeated his feelings to her in person. After the two left the restaurant, Gradine telephoned Donlin at home, and attempted again to explain his feelings for her.

On July 22, 1987, Donlin was not at work, and Gradine telephoned her at home and asked her to lunch. Donlin said she could not go, and Gradine asked her whether she knew of any available housing, because he was experiencing marital difficulties. Donlin indicated that she could not help him, but suggested that he look at bulletin board listings.

On the morning of July 23, 1987, Gradine placed a note on Donlin's car which stated: "I Deeply Love you and always will forever —My Love." Shortly thereafter, Gradine went to see Donlin, who was working at her job as campus telephone operator. Gradine asked to look at Donlin's work schedule, stepped behind her, and began massaging Donlin's neck and shoulder. At that point, Donlin told Gradine to stop immediately, and stated that she did not want to have anything to do with him. Gradine stopped what he was doing, and left the area. Later that morning, he received a handwritten note which Donlin had written the day before. The note stated:

This to inform you that I no longer want to have any kind of contact with you. No phone calls to me at home, or work. No personal conversation at all. * * *

Later that same day, Donlin contacted the college to complain about Gradine's actions. The assistant vice president of finance, who also acted as an assistant in personnel matters, listened to Donlin's story, and then spoke to her superior, who contacted Gradine's supervisor. Gradine was paged, and admitted writing the letter to Donlin, telephoning her, and massaging her neck and shoulders. Without requesting any further information, the college immediately discharged Gradine from his employment.

Gradine applied for unemployment compensation, and a hearing was conducted by a referee from the Department of Jobs and Training. The referee determined that Gradine had been discharged for misconduct, and was therefore disqualified from receiving benefits. The referee noted that Gradine had testified "in a forthright and seemingly credible manner," while the college had relied upon hearsay, and had not presented testimony by Donlin herself. Nevertheless, the referee reasoned:

The claimant was in a supervisory capacity over the student until the final week of his employment which included the specific events leading to his discharge. In addition, the claimant is 23 years older than the student[1]. Both of these factors tend to create an imbalance in the relative positions of the claimant and the student[.]

\* \* \* \* \* \*

There was no evidence offered by the claimant that such physical contact was requested or even desired by the female student. * * * The touching was sexually provocative and totally inappropriate. * * * The claimant's actions clearly went beyond the standards of behavior an employer has a right to expect of its employees.

Gradine appealed the referee's decision to a Commissioner's representative, who reversed the referee's decision, finding it was not in accordance with the evidence and the law. The Commissioner reasoned:

It is abundantly clear from the evidence of record that the essential character of the claimant's behavior was misguided infatuation rather than unwelcome sexual harassment.

The Commissioner found that until July 23, Gradine's overtures were at no time discouraged by Donlin. The Commissioner also found that Gradine's testimony "clearly shows that he did not understand until he was directly told by the student on July 23, 1987, that the feelings that he had for her were not mutual." Because Donlin had not clearly rejected Gradine's overtures,

---

1. The testimony indicated that Gradine was 44 years old, and Donlin was 21.

and because Gradine was not aware that his touching was unwelcome, the Commissioner refused to characterize Gradine's conduct as sexual harassment.

The Commissioner also refused to adopt the college's argument that Gradine had violated its policy regarding sexual harassment. The Commissioner noted that the college's policy distinguished between romantic relationships and sexual harassment, and did not expressly circumscribe personal relationships between employees and students. The Commissioner reasoned that because Gradine's conduct was romantically motivated, the college's policy was not violated.

Finally, the Commissioner found that Gradine's age and previous position as Donlin's supervisor did not create the imbalance found by the referee, since (a) Donlin was over the age of majority; and (b) at the time of the incidents, Gradine was no longer Donlin's supervisor.

The college has obtained a writ of certiorari to review the Commissioner's decision.

## ISSUES

1. Did the Commissioner properly determine that Gradine's conduct did not constitute sexual harassment?

2. Were Gradine's actions a violation of the college's policy against sexual harassment?

3. Did public policy reasons compel the termination of Gradine as a result of Donlin's allegations of sexual harassment?

4. Did Gradine's actions constitute misconduct even if he did not engage in sexual harassment?

5. Did Gradine's conduct constitute assault and battery, and therefore gross misconduct?

## ANALYSIS

1. Minn.Stat. § 268.09, subd. 1(2) (1986) provides that an employee who engages in misconduct is disqualified from receiving unemployment compensation benefits. We have held that an employee's harassment of other employees may constitute misconduct for unemployment compensation pur-

poses. *Reed v. Minnesota Dept. of Transportation*, 422 N.W.2d 537, 539 (Minn.Ct. App.1988), *pet. for rev. filed* (Minn. June 3, 1988).

"Sexual harassment" while not defined for misconduct purposes, has been defined within the provisions of the unemployment compensation statutes governing an employee's voluntary separation from employment:

Sexual harassment means unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other conduct or communication of a sexual nature[.]

Minn.Stat. § 268.09, subd. 1(1) (1986). While this definition is not specifically applicable to cases involving employee misconduct, it does provide some guidance in determining what the legislature considers "sexual harassment." A similar definition of sexual harassment is found within the statutes governing the Department of Human Rights:

"Sexual harassment" includes unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature[.]

Minn.Stat. § 363.01, subd. 10a (1986).

Here, the Commissioner's representative found that Gradine's actions simply did not rise to the level of sexual harassment. In challenging the Commissioner's determination, the college raises questions of both fact and law.

### (a) Factual Issues

With regard to factual issues, this court's scope of review is limited. Viewing the evidence in the light most favorable to the Commissioner's findings, we must determine whether there is evidence sufficient to sustain those findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). Specifically, questions regarding the credibility of witnesses are to be determined by the Commissioner, and this court may not substitute its judgment, but should defer to the Commissioner's de-

terminations. *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331, 332 (Minn.Ct.App. 1984). The Commissioner's findings, and not those of the referee, are the subject of this court's review. *Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Mar. 13, 1985). An employer has the burden of proving that an employee is guilty of misconduct disqualifying him from the receipt of unemployment compensation benefits. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

The Commissioner found that Gradine did not intend to harass Donlin, and, more importantly, that he did not understand that his attentions were unwelcome. The Commissioner specifically found that Donlin did not discourage Gradine's actions until July 23, 1987—the same day Gradine was discharged. Gradine's intention isn't as important as the fact that, based on their relationship up to this point, "touching" her neck would not necessarily be viewed by her as unwelcome. When she indicated that it was, he immediately ceased touching her.

The Commissioner's findings are supported by the record. Gradine testified at length regarding his actions, and indicated that at no time prior to July 23 did Donlin indicate that his attentions were unwanted. This evidence amply supports the Commissioner's findings, and we will not reweigh the evidence and determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954).

(b) Issues of Law

Once the facts are determined, the question whether an employee's actions constituted misconduct is one of law.

■ The college argues that Gradine's touching constituted sexual harassment as a matter of law, and that Gradine's intentions and understandings are not applicable to a determination whether his actions constituted sexual harassment. However, the relationship between them and the understanding of the parties in this case is de-fined by Gradine, since only he testified. We don't know Donlin's understanding or intentions at the time of the "touching."

Definitions of "sexual harassment" in both the unemployment compensation statutes and the human rights statutes require that a perpetrator's actions be "unwelcome." However, as the college's policy regarding sexual harassment itself indicates, there are situations in the workplace where employees engage in consenting personal relationships, and where conduct such as Gradine exhibited in this case would not be viewed as "unwelcome." Here, as the Commissioner found, Gradine believed, although falsely, that he had a personal relationship with Donlin, and that his actions were not unwelcome. Indeed, the Commissioner found that prior to July 23, Donlin did not give Gradine cause to believe his attentions were unwelcome.

Cases from other jurisdictions cited by the college involve situations where an employee's remarks or actions were blatantly suggestive or off-color, or where an employee harassed several women. We can also envision other situations which could result in a finding of sexual harassment: touching of erogenous zones; touching after being told to stop; touching by a stranger; or touching by a supervisor. Here, however, the facts involve only one woman, to whom Gradine expressed feelings of love and affection. Those feelings were expressed to Donlin upon several occasions over a period of three days. Upon none of those occasions did Donlin inform Gradine that his attentions were unwelcome. Gradine touched Donlin only once, when he began massaging her shoulder and neck area, and he stopped when she asked him to. At the time Gradine began revealing his emotions to her, Donlin had already been transferred to another position; thus, Gradine no longer had any supervisory authority over her. The specific facts of this case support the Commissioner's conclusion that Gradine's actions did not constitute sexual harassment.

2. Our conclusion that Gradine did not engage in sexual harassment renders moot

the college's claim that Gradine violated its written policy against sexual harassment.

3. The college argues that public policy required the termination of Gradine as a result of his sexual harassment. The college claims that because Gradine was "admittedly guilty" of sexual harassment it had no recourse but to terminate him.

First, Gradine was not "admittedly guilty" of sexual harassment. While he admitted his conduct, he never admitted that his actions constituted sexual harassment. To the contrary, he consistently denied sexually harassing Donlin, and the Commissioner specifically found that his actions constituted "misguided infatuation," rather than sexual harassment.

More importantly, the issue is not whether the college was justified in discharging Gradine; rather the question to be resolved is whether Gradine engaged in "misconduct" for unemployment compensation purposes. *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 143 (Minn.1984). Thus, while the college may have been justified in discharging Gradine,[2] the college's argument does not answer the question whether Gradine is entitled to receive unemployment compensation benefits.

■ 4. We also endorse the Commissioner's conclusion that Gradine's actions did not constitute misconduct, even in the absence of sexual harassment.

"Misconduct," for unemployment compensation purposes has been defined as follows:

" * * * [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the

employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)).

Gradine's belief that he was romantically involved with Donlin does not fall within the parameters of the *Tilseth* definition of misconduct. At most, his actions were the result of a good faith error in judgment or discretion.

5. Finally, the college argues that by touching Donlin, Gradine committed assault and battery, and therefore gross misconduct. *See* Minn.Stat. § 268.09, subd. 1(3) (1986). This issue was not raised before the referee or the Commissioner's representative, and is therefore improperly raised on appeal. *See Kampa v. Normandale Tennis Club*, 393 N.W.2d 195, 197 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 17, 1986).

### DECISION

The Commissioner properly determined that Gradine's actions did not constitute sexual harassment or misconduct for unemployment compensation purposes.

Affirmed.

FOLEY, Judge (dissenting).

I respectfully dissent. I totally disagree with the result in this case and believe it should be reversed. The majority opinion, by affirming the award to the employee Gradine, gives mere lip service to the statute that governs these matters. The law is that an employee is not entitled to unemployment compensation when that employ-

2. We do note, however, that the college's actions appear to have been premature. Gradine received no opportunity to explain why he acted as he did; rather, he was immediately dis-

charged when he admitted that he had written the letters, made the phone calls, and touched Donlin.

ee is discharged for misconduct. Here, there is ample proof of misconduct.

In just five or six days, no longer, 43–year–old Gradine fantasizes that he is in love with a 21–year–old female student employee to the point that he presumes the right to take personal liberties with that employee by attempting to massage her neck when she was at her work as a switchboard operator. The female student employee was offended and protested this conduct to the school authorities.

Gradine admitted that he had attempted to massage the young woman's neck and that he had been calling her on the telephone and writing to her in those few days. He was immediately discharged. Gradine's conduct was violative of school policy as well as the standard set forth in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973).

The majority measures this occurrence only from Gradine's perspective, stating that Gradine did not *intend* to sexually harass the student. It is undisputed that he intended his acts. The determination of whether those acts constituted sexual harassment is an objective standard, and from an objective standard these acts constitute sexual harassment and thus misconduct.

The majority would have us believe this is nothing serious, it is just something that happens in the workplace. Who established the standard that women employees must accept this kind of conduct? And who established the standard that the employer's compensation fund must be charged for that conduct?

The employer, College of St. Scholastica, discharged Gradine for his conduct toward the student when he admitted the act of attempting to massage the woman's neck and *other so-called expressions of love.* What gave Gradine the right to presume to take this liberty? Does not an employee, male or female, have the right to carry out his or her duties to the employer without some implied understanding that nonconsensual touching in the workplace is a condition of employment? *See Tretter v. Li-*

*quipak Intern, Inc.,* 356 N.W.2d 713 (Minn.Ct.App.1984).

If the Commissioner is to be sustained here by ignoring the uninvited touching simply by referring to the act as an "infatuation," then the law has no meaning. Gradine's conduct was disruptive to the student's carrying out her duties for her employer, and under *Tilseth* or any other standard, the Commissioner should be reversed.

It would have been better had the student testified, but the conduct was admitted by Gradine and the student's testimony was therefore not essential to decision. It is undisputed that the student had not consented to this conduct, and she immediately reported the incident to the school authorities, which led to Gradine's dismissal. It is clear the conduct was nonconsensual and could hardly be called office banter. The student was personally offended.

What message do we send out to women employees in the workplace? Is it that personal touching is to be allowed? I think not. To award unemployment here is to ignore misconduct without any evidence to support that decision and when the contrary is true.