**MUNRO HOLDING, LLC, Relator,**

v.

**Jacki L. COOK, Respondent,**

**Commissioner of Employment and Economic Development, Respondent.**

No. A04–1249.

Court of Appeals of Minnesota.

May 3, 2005.

Brian E. Cote, Cote Law Firm, Ltd., Minneapolis, MN, for relator.

Jacki L. Cook, Ogilvie, MN, pro se respondent.

Lee B. Nelson, Linda A. Holmes, Department of Employment and Economic Development, St. Paul, MN, for respondent Commissioner.

Considered and decided by MINGE, Presiding Judge; WRIGHT, Judge; and PORITSKY, Judge.*

**OPINION**

WRIGHT, Judge.

Relator challenges the decision of the commissioner's representative that respondent-employee quit her employment with good reason attributable to the employer and is, therefore, entitled to receive unemployment benefits. Relator argues that (a) the evidence does not support the finding that the employer-owner engaged in sexual harassment; (b) the employee did not properly notify the employer of the harassment; and (c) even if the employee's notification were proper, the employer took timely and appropriate action to stop the harassing conduct. We affirm.

**FACTS**

Respondent Jacki Cook was employed by relator Munro Holding, LLC (Munro Holding) as a waitress from July 20, 2003, through October 8, 2003.[1] Munro Holding is owned by Pat Munro.

According to Cook, about once a week throughout her employment, employer-owner Munro grabbed her hips from behind and brushed against her while she was working. Munro did so even when there was sufficient space to pass Cook without touching her. Although Munro touched Cook in this manner at least eleven times, Cook neither confronted Munro nor informed a supervisor about Munro's conduct at the time it occurred.

On October 6, 2003, Cook was taking food from the pick-up station to serve a customer when Munro came up behind her and "grabbed [her] butt" by placing both palms on her buttocks and squeezing. On this occasion, Cook immediately told the cook who was standing nearby that Munro had grabbed her and that if Munro touched her again, she would quit. The cook reported the incident to the head cook, who phoned the kitchen manager, Debra Duffee, at home to relay Cook's complaint.

Duffee returned to the restaurant later that evening and spoke directly with Cook about the incident. Cook told Duffee that Munro had grabbed her buttocks that night, that he had intentionally grabbed her hips on several prior occasions, and that Munro's behavior made her very uncomfortable. Duffee responded that Munro was "just a very touchy-feely guy" and that "he didn't mean anything by it." According to Cook, Duffee also admitted that Munro had slapped her buttocks before, that other female servers had complained about Munro's conduct, and that she had previously "warned" Munro about his behavior. Duffee then offered to speak with Munro on Cook's behalf.

The next day, Cook called the head waitress, seeking a substitute to take her shift. Cook told the head waitress about Munro's actions the day before and her discussion with Duffee. During their conversation,

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The commissioner's representative found that Cook quit her employment on October 7, 2003. The record demonstrates that Cook initially testified to this date but later amended her testimony, ultimately concluding that she quit on October 8, 2003. Although the record does not support the commissioner's October 7, 2003 finding, the error is harmless.

Cook expressed concern that Duffee was not taking her complaint seriously. The head waitress relayed to Duffee that Cook was frustrated by Duffee's reaction to the alleged harassment. When Duffee called Cook to discuss their options for confronting Munro about his behavior, Cook advised Duffee that she would talk to Munro. Duffee expressed approval and reassured Cook that she "backed her employees a hundred percent."

On the morning of October 8, Duffee and the head waitress confronted Munro about Cook's complaint and informed Munro that Cook would be speaking with him about the allegations. Munro denied touching Cook. Shortly thereafter, Cook called Duffee and formally quit her employment because she was afraid to return to work.

Cook subsequently established an unemployment benefits account with the Department of Employment and Economic Development (department). The department determined that Cook quit with good reason caused by her employer and was, therefore, entitled to unemployment benefits. Munro Holding appealed to an unemployment law judge, who reversed the department's decision, concluding that Cook was disqualified from receiving benefits because Cook did not give Munro Holding "a reasonable opportunity to correct the adverse working conditions." Cook then appealed to the commissioner's representative, who reversed the decision of the unemployment law judge and reinstated Cook's benefits. The commissioner's representative found that Munro's conduct was inappropriate and offensive and created an intimidating and hostile work environment for Cook. The commissioner's representative concluded that "[Munro] was aware of the sexual harassment and ... [he] failed to take timely and appropriate action because [Munro] himself was the harasser and he continued to harass [Cook] during her employment." This certiorari appeal followed.

## ISSUE

Did the commissioner's representative err in concluding that respondent quit her employment because of a good reason caused by the employer?

## ANALYSIS

 In unemployment cases, we review the record to determine whether it reasonably supports the decision of the commissioner's representative. *Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn. 1995). While we defer to the commissioner's representative's findings of fact if the record reasonably supports them, similar deference is not afforded questions of law. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). Whether an employee had good cause to quit is a question of law, which we review de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn.App.2000). Credibility determinations are resolved by the commissioner's representative and will not be disturbed on appeal. *Jenson v. Dep't of Econ. Sec.*, 617 N.W.2d 627, 631 (Minn. App.2000), *review denied* (Minn. Dec. 20, 2000).

An employee who voluntarily terminates his or her employment is disqualified from receiving unemployment benefits unless he or she "quit the employment because of a good reason caused by the employer[.]"[2]

---

**2.** The revisor of statutes inadvertently substituted the term "ineligible for" for the term "disqualified from" in Minn.Stat. § 268.095, subds. 1, 4, 7, 8(a) (Supp.2003). *See* Minn.

Stat. § 268.095, subds. 1, 4, 7, 8(a) (2002) (using term "disqualified from"); 2003 Minn. Laws 1st Spec. Sess. ch. 3, art. 2, § 11 (making other changes to Minn.Stat. § 268.095,

Minn.Stat. § 268.095, subd. 1(1) (Supp. 2003).[3] "Good reason caused by the employer" is defined as an action by the employer "(1) that is directly related to the employment and for which the employer is responsible;" and "(2) that is significant and would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a)(1), (2) (Supp.2003).

■ Sexual harassment by an employer or by fellow employees provides an employee with a good reason to quit if (1) "the employer was aware, or should have been aware" of the harassment; and (2) "the employer failed to take timely and appropriate action." *Id.*, subd. 3(e) (Supp. 2003). The employee has the burden to demonstrate both that she gave the employer notice and that the employer failed to take timely and appropriate action. *Biegner v. Bloomington Chrysler/Plymouth, Inc.*, 426 N.W.2d 483, 486 (Minn.App. 1988).

### A.

■ As a threshold matter, Munro Holding argues that the commissioner's representative erred in finding that Munro sexually harassed Cook. Whether one engaged in the actions underlying the sexual harassment claim is a question of fact. *Fore v. Health Dimensions, Inc.*, 509

N.W.2d 557, 560 (Minn.App.1993). But whether such actions constitute sexual harassment under the statute is a question of law. *Gradine v. Coll. of St. Scholastica,* 426 N.W.2d 459, 463 (Minn.App.1988), *review denied* (Minn. Aug. 24, 1988).

Sexual harassment is defined in relevant part as "unwelcome sexual advances ... sexually motivated physical contact or other conduct or communication of a sexual nature" when "the conduct or communication has the purpose or effect of substantially interfering with an applicant's work performance or creating an intimidating, hostile, or offensive working environment." Minn.Stat. § 268.095, subd. 3(e)(3) (Supp. 2003). Our canons of construction require us to construe the unambiguous language of a statute according to its plain meaning. *See* Minn.Stat. 645.16 (2004).

■ We are mindful that the Minnesota Human Rights Act and Title VII of the Civil Rights Act employ similar language in defining "sexual harassment." *See* Minn.Stat. § 363A.03, subd. 43 (2004); 42 U.S.C. §§ 2000e–2000e–17 (2000). We also acknowledge that caselaw under these statutory schemes has established a four-prong test to make a prima facie case of sexual harassment based on "hostile work environment," invoking a substantially higher standard than we employ here.[4]

subd. 1, but retaining term "disqualified from"); 2003 Minn. Laws 1st Spec. Sess. ch. 3, art. 2, § 20(j), (k) (directing revisor to change the term "disqualified from" to "ineligible for" only in Minn.Stat. § 268.095, subd. 12, and then to renumber to Minn.Stat. § 268.085, subd. 13b).

3. Amendments made to the 2002 statute became effective August 1, 2003. *See* Minn. Stat. § 645.02 (2004) (providing that, unless otherwise specified, each act "takes effect on August 1 next following its enactment"). Because Cook quit on October 8, 2003, we apply Minn.Stat. 268.095, subd. 1(1) (Supp.2003), which was the law in effect at the time of the

quit. *See Brown v. Nat'l Am. Univ.,* 686 N.W.2d 329, 332 (Minn.App.2004), *review denied* (Minn. Nov. 16, 2004).

4. For example, the Eighth Circuit held that a male teacher's inappropriate conduct toward a female faculty member over two school years, which included touching her, commenting on her appearance, saying "I love you," exhibiting demeanor of a sexual nature, calling her many times at home, and giving her two romance novels and another gift, was "not sufficiently severe or pervasive" to constitute sexual harassment. *Alagna v. Smithville R–II Sch. Dist.,* 324 F.3d 975, 979–80 (8th Cir.2003); *see also Meriwether v. Caraus-*

However, because the unemployment benefits statutory scheme serves a different purpose than civil rights legislation, we decline to import the higher standard employed in these other bodies of law. *See Weaver v. Minn. Valley Labs., Inc.*, 470 N.W.2d 131, 135 n. 2 (Minn.App.1991) (noting that Minnesota courts may "distinguish between ... harassment for unemployment compensation purposes and ... for other purposes, such as suit for money damages against the employer"). Here, we are asked to resolve the sole issue of whether an employee qualifies for unemployment benefits because she had a good reason to quit her employment caused by her employer, not whether an employee presents an actionable claim for damages in a sexual-harassment case.

■ The commissioner's representative found, "On a number of occasions during the applicant's employment, the owner touched the applicant's hips and brushed against her while the applicant was working." The commissioner's representative also found, "The final incident occurred on October 6, 2003 ... [when] the owner grabbed the applicant's hips with both hands and squeezed." In evaluating the evidence presented, the commissioner's representative further explained, "We find credible the evidence submitted by the applicant that she was subjected to inappropriate touching by the owner of the employer."

These findings are supported by the record. According to Cook, the repeated touching was not accidental and occurred approximately once a week throughout her tenure. Cook testified that, on October 6, Munro "grabbed [her] butt" by placing both of his palms on her buttocks and squeezing. Although Munro maintains that any touching was benign, the commissioner's representative rejected this claim as lacking credibility. Determinations of credibility are the province of the commissioner's representative and are accorded deference on review by an appellate court. *Gradine*, 426 N.W.2d at 462.

■ The commissioner's representative found that, at the time Cook quit, "[she] was too fearful and embarrassed to return to work" and that, after the final incident, "[Cook] was too frightened to either confront the owner or to return to work." Again, the record reasonably supports the commissioner's representative's findings. Cook testified that, prior to October 6, she did not confront Munro because she was scared of him. Cook testified that Munro's touching made her uncomfortable and that she ultimately decided to quit because she "didn't feel comfortable [at work]" and was "scared to go there."

■ The commissioner's representative also did not err in concluding as a matter of law that Munro's actions constitute sexual harassment. Indeed, we conclude that Munro's repeated "inappropriate touching" was "unwelcome ... sexually motivated physical contact or ... conduct of a sexual nature." Munro could have avoided touching Cook but, instead, intentionally grabbed and otherwise touched her. Applying the plain language of Minn. Stat. § 268.095, subd. 3(e), to the facts

---

tar Packaging Co., 326 F.3d 990, 993 (8th Cir.2003) (holding that single incident of grabbing employee's buttocks did not demonstrate a hostile work environment); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir.2002) (finding no sexual harassment when male co-worker made a pass at female co-worker who had to work with him for three more years, suffering additional boorish behavior until she resigned); *Klink v. Ramsey County by Zacharias*, 397 N.W.2d 894, 901–02 (Minn.App.1986) (holding that foul language and vulgar behavior in workplace did not establish sexual harassment), *review denied* (Minn. Feb. 13, 1987).

presented here, we conclude that repeatedly and advertently grabbing a female employee's hips and buttocks from behind constitutes sexually motivated physical contact or conduct of a sexual nature. The record also establishes that Munro's touching was unwanted, caused Cook to feel uncomfortable and afraid, and ultimately caused her to quit the employment. Thus, we also conclude, as did the commissioner's representative, that Munro's inappropriate, unwelcome, sexually motivated physical contact created an offensive, intimidating, and hostile work environment for Cook.

## B.

Having determined that Munro's conduct constituted sexual harassment, our next inquiry is whether Cook adequately demonstrated that Munro Holding was "aware or should have been aware" of the sexual harassment. *See Biegner*, 426 N.W.2d at 486. Munro Holding contends that Cook should have specifically confronted Munro about the harassment on or before October 6, and her failure to do so precludes a determination that sexual harassment by Munro constituted a good reason to quit caused by her employer.

■■■ To establish an employer's awareness of the sexual harassment, the employee ordinarily must provide the employer with notice of the sexual harassment. *McNabb v. Cub Foods*, 352 N.W.2d 378, 382 (Minn.1984). Notice to the employee's supervisor or upper-level management provides the employer with the knowledge required to discipline harassing employees or otherwise remedy inappropriate conduct. *See Larson v. Dep't of Econ. Sec.*, 281 N.W.2d 667, 669 (Minn.1979) (holding that, without full knowledge of harassment from co-workers, employer had right to assume problem had been solved).

■■ But a sexual harassment victim is not required to complain to the employer's upper-level management when the circumstances demonstrate that the employer should have had knowledge of the harassment. *McNabb*, 352 N.W.2d at 383; *cf. Bersie v. Zycad Corp.*, 417 N.W.2d 288, 291 (Minn.App.1987) (employer liability may be created through either actual knowledge of incidents or the fact that incidents were so pervasive employer should have known of alleged misconduct). In the unique circumstance in which the actual employer—rather than a co-worker or manager—engages in sexual harassment, we may infer that the employer had or, at the very least, should have had knowledge of the sexual harassment. *See Clark v. K–Mart Store # 3059*, 372 N.W.2d 847, 850 (Minn.App.1985) (holding that, because assistant manager was offender, he "clearly had knowledge of the situation").

In *Kay v. Peter Motor Co.*, a factually similar sexual harassment damages case, we observed that an employee is not required to complain to his or her supervisor when the supervisor is the harasser because the employee would not have "a reasonable expectation of assistance." 483 N.W.2d 481, 484 n. 1 (Minn.App.1992); *see also Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 878 (D.Minn.1993) (reasoning that employees are not required to complain when person to whom report should be made is harasser). The *Kay* court reasoned that, because the owner's actions were patent acts of sexual harassment, the employer knew or should have known that the owner's conduct constituted wrongful harassment. 483 N.W.2d at 485.

■■■ Here, the commissioner's representative concluded that Munro either "was or should have been aware that his conduct was inappropriate or offensive" such that Cook was not required to tender a complaint. We agree. The record es-

tablishes that Munro, the employer-owner, engaged in patently offensive harassing conduct. In light of Munro's position as employer-owner and the patently offensive nature of his conduct, Cook was not required to formally complain to her supervisor or management to notify Munro Holding of the sexual harassment. *See Kay,* 483 N.W.2d at 484 n. 1. Under these circumstances, Munro should have been aware of the harassing conduct, regardless of whether Munro admitted that his actions legally constituted sexual harassment. *See Clark,* 372 N.W.2d at 850. When, as here, an employer-owner engages in patently offensive harassing conduct, the employer-owner is deemed to be aware of the sexual harassment notwithstanding the lack of a formal complaint.

### C.

Munro Holding also argues that it took "timely and appropriate" action once Cook notified her immediate supervisors of the sexual harassment, thereby precluding Cook from establishing good cause to quit.

■ Once an employer has notice of sexual harassment, the employer assumes an affirmative duty to investigate the complaint and take appropriate steps against the harasser, notwithstanding any misgivings by the harassment victim. *McNabb,* 352 N.W.2d at 384; *Peppi,* 614 N.W.2d at 752; *Gillson v. State, Dep't of Natural Res.,* 492 N.W.2d 835, 841 (Minn.App. 1992), *review denied* (Minn. Jan. 28, 1993). Timely and appropriate action may include following an established anti-harassment policy, disseminating a new policy, transferring the harassing employee to another shift, or taking disciplinary action against the harassing employee. *McNabb,* 352 N.W.2d at 384; *Wetterhahn v. Kimm Co.,* 430 N.W.2d 4, 6–7 (Minn.App.1988).

■ A complaining employee ordinarily must give the employer an opportunity to take the appropriate steps before quitting the employment. *Dura Supreme v. Kienholz,* 381 N.W.2d 92, 95 (Minn.App. 1986). But, if upon reporting, an employee is given no assurance that the problem will be corrected, the employee has a good reason to quit. *Id.; see also Hanke v. Safari Hair Adventure,* 512 N.W.2d 614, 617–18 (Minn.App.1994) (concluding that employee had good reason to quit when employee reported manager's harassing comments to owner and owner stated that he could not "control the opinions of what other people feel or think"); *cf. Porrazzo v. Nabisco, Inc.,* 360 N.W.2d 662, 664 (Minn.App.1985) (holding that employee quit with good cause when, after he was given increased work hours and responsibilities, he was given no assurances of assistance from his employer).

■ If an employer-owner, who typically would bear the responsibility to initiate action against a harassing party, is in fact the harassing party, the employee does not have a reasonable expectation that the owner will end the harassment. *See Kay,* 483 N.W.2d at 484 n. 1 (noting that employee need not complain to supervisor before quitting employment when supervisor is harasser because employee would not have "reasonable expectation of assistance"); *see also DiGiannantoni v. Wedgewater Animal Hosp., Inc.,* 109 Ohio App.3d 300, 671 N.E.2d 1378, 1383 (1996) (noting that when employee is subjected to physical sexual harassment by employer, employee need neither notify employer nor wait for employer to correct problem before quitting); *Sweitzer v. State, Dep't of Employment Sec.,* 43 Wash.App. 511, 718 P.2d 3, 6 (1986) (holding that employee is excused from exhausting alternatives before quitting when such action would be futile). Under such circumstances, resignation, without providing the employer an

opportunity to take corrective action, is justified.

■ Here, because the employer-owner sexually harassed Cook in a patently offensive manner throughout her employment, Munro Holding knew of the harassment, not only on October 6 when Cook complained to Duffee, but also in late July 2003 when Munro initiated the sexual harassment. Once on notice, Munro was required to take timely and appropriate action to end the harassment. *See McNabb*, 352 N.W.2d at 384 (holding that "[a]n employer must act to prevent and correct harassment when it becomes aware of the problem"). The record establishes, however, that instead of ceasing the harassment, Munro continued to touch Cook unnecessarily and inappropriately.

Although Cook's immediate supervisors, the head waitress and Duffee, confronted Munro shortly after they learned of the harassment, their response was not sufficient under the circumstances. An oral warning from a superior to a subordinate may constitute appropriate action, but a subordinate manager's oral warning to her superior is insufficient. Neither Duffee nor the head waitress had the authority to fire, transfer, suspend, or otherwise discipline Munro. Furthermore, Munro's summary denial of the allegations precluded any further investigation. The only appropriate action to be taken under the facts before us was for Munro to stop harassing Cook after the first instance. Because he did not do so, Munro Holding failed to take "timely and appropriate action."

Cook had no one else to whom she could report the harassment and from whom she could expect remediation. She was not required to withstand further sexual harassment while waiting for Munro to cease his harassing conduct or forego unemployment benefits. Thus, Cook had a good reason to quit caused by her employer.

## DECISION

Respondent quit her employment for a good reason caused by her employer. Because it was the employer-owner who engaged in sexual harassment, the employee was not required to complain to her employer about the harassment or wait for him to take "timely and appropriate" action to end the harassment in order to demonstrate a good reason to quit her employment.

**Affirmed.**