*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0050**

Benson Giwa, Relator,

vs.

Wal-Mart Associates, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed September 29, 2014
Reversed and remanded
Reilly, Judge**

Department of Employment and Economic Development
File No. 31567726-3

Bruce K. Piotrowski, Restovich Braun & Associates, Rochester, Minnesota (for relator)

Wal-Mart Associates, Inc., c/o TALX UCM Services, Inc., St. Louis, Missouri (respondent)

Lee B. Nelson, Munazza Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for Department of Employment and Economic Development)

        Considered and decided by Reilly, Presiding Judge; Peterson, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Relator challenges the determination of the unemployment-law judge (ULJ) that he is ineligible to receive unemployment benefits because he quit his employment without good reason attributable to his employer. Because the ULJ's factual findings are not substantially sustained by the evidence in the record, we reverse and remand.

## FACTS

Relator Benson Giwa was employed with respondent Wal-Mart Associates, Inc., from October 13, 2001, to August 2, 2013. At the time of his termination, Giwa was employed as a retail cashier working four days a week. Giwa asserts two separate bases for leaving his employment: first, that he was subjected to harassment by coworkers; and second, that the company breached its agreement to schedule Giwa to work four days each week.

Giwa contends that he was subjected to racial slurs and harassment during the course of his employment. In 2002, Giwa was working in the electronics department when an assistant store manager criticized Giwa for not following instructions and asked him to sign a written cautionary warning. When Giwa refused to sign the warning, the assistant store manager used a racial slur against Giwa and instructed him to go home. The next morning, Giwa reported the incident to the store manager who said he would "take care of" the situation. In 2005, one of Wal-Mart's customer-service managers directed a racial slur at Giwa. Giwa immediately called the store manager to report the incident. The store manager stated that he would "take care of it." Giwa testified that, in

both instances, his coworkers did not direct racial epithets at him following his report of the incidents to management.

Instead, Giwa testified that the customer-service manager who had previously used racial slurs against him began to accuse him of stealing and warned other employees to "watch [him] carefully." Giwa stated that this manager harassed Giwa and yelled at him in front of customers. The ULJ found that the manager's conduct lasted from 2004 until 2013, when the manager moved to a different shift. During this time period, Wal-Mart's management told Giwa they would investigate the conduct, but nothing happened.

Ultimately, in March 2012, Giwa wrote to the Minnesota Department of Human Rights (MDHR) to complain about his treatment at Wal-Mart. The MDHR recommended mediation and attempted to schedule three separate mediation appointments for Giwa and Wal-Mart. Wal-Mart's representatives failed to appear at each of the three meetings. In January 2013, Giwa spoke with his store manager in an attempt to reschedule the meetings, and the store manager agreed. Despite this promise, the store manager did not reschedule the MDHR meetings.

Giwa's second basis for leaving his employment relates to his weekly schedule. In July 2013, Giwa was scheduled for only one day of work instead of his usual four-day schedule. The assistant store manager who usually drew up the schedule indicated that a new supervisor had made the schedule for that week. The assistant store manager agreed to look into the matter, but Giwa's schedule did not get fixed. On July 16, Giwa submitted his two-week notice and ended his employment on August 2. On the same

date, Giwa learned that he was scheduled to work his normal four-day week. It is unclear whether Giwa's work schedule was changed before or after he submitted his notice.

Giwa thereafter applied for unemployment benefits. On September 13, the Minnesota Department of Employment and Economic Development (DEED) found that Giwa was ineligible for unemployment benefits because Giwa did not have a good reason caused by the employer for quitting. Giwa appealed DEED's decision on September 23, and the matter was scheduled for a de novo hearing. A hearing was held on October 9 by way of a telephone conference call before ULJ Matthew St. Martin. Wal-Mart did not participate in the hearing. On October 11, the ULJ issued a decision finding that Giwa quit his employment and was ineligible for payment of unemployment benefits. Giwa requested reconsideration of the ULJ's decision, which was denied. This certiorari appeal follows.

## D E C I S I O N

When reviewing an unemployment-insurance-benefits decision this court may affirm, remand the case for further proceedings, or reverse and modify the decision if the substantial rights of the relator have been prejudiced because, among other things, the decision is unsupported by substantial evidence in view of the entire record as submitted. Minn. Stat. § 268.105, subd. 7(d) (2012).[1] We view the ULJ's factual findings in the light most favorable to the decision and will not disturb them if the evidence substantially sustains them. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We

---

[1] Minn. Stat. § 268.105, subd. 7, was amended effective August 1, 2014. The amendment did not affect subdivision 7(d). 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29.

defer to the ULJ's credibility determinations. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 882 (Minn. App. 2012). Questions of law are subject to de novo review. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

**I.**

An applicant who quits employment is not eligible to receive unemployment benefits unless a statutory exception applies. Minn. Stat. § 268.095, subd. 1 (2012). One such exception is when an applicant quits "because of a good reason caused by the employer." *Id.*, subd. 1(1). A "good reason caused by the employer" is a reason that: (1) "is directly related to the employment and for which the employer is responsible"; (2) is adverse to the employee; and (3) "would compel an average, reasonable worker to quit and become unemployed." *Id.*, subd. 3(a) (2012). Thus, irreconcilable differences with an employer or "mere dissatisfaction with working conditions" do not constitute good cause to quit. *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn. App. 1987). Whether an employee had good cause to quit is a question of law we review de novo. *Rowan*, 812 N.W.2d at 883.

Giwa testified that he quit because he felt disrespected and harassed. Harassment by a coworker may constitute good cause to quit, but only if "the employer has notice and fails to take timely and appropriate measures to prevent [the] harassment." *Nichols v. Reliant Eng'r & Mfg., Inc.*, 720 N.W.2d 590, 595 (Minn. App. 2006). Giwa reported the 2002 and 2005 incidents to Wal-Mart's store managers. In each instance, Wal-Mart's store managers promised to "take care of it," and Giwa acknowledged that the two employees stopped directing racial epithets at him following his reports. The ULJ

5

determined that Wal-Mart addressed Giwa's concerns about the inappropriate comments by speaking with the offending employees and ensuring that racial slurs were no longer directed at Giwa. The ULJ concluded that although the comments were objectionable, "the evidence fails to show that the average, reasonable worker would quit and become unemployed given these circumstances." The evidence in the record substantially supports the ULJ's conclusion with respect to the isolated 2002 and 2005 incidents.

However, this court is troubled by Wal-Mart's failure to participate in a MDHR mediation session. Giwa testified that he was subject to ongoing harassment by a manager from approximately 2004 through 2013. Giwa reported this conduct to Wal-Mart's management, but the harassment did not stop. Indeed, the ULJ found that "Giwa complained to management about these comments, but the comments continued until the manager moved to another shift in early 2013." The MDHR recommended mediation to address Giwa's concerns. On three separate occasions, Wal-Mart's representatives failed to appear for scheduled MDHR mediation appointments. In January 2013, Giwa's store manager agreed to reschedule the meeting but failed to do so. The ULJ discounted the importance of the MDHR mediation session, finding that its purpose was to address Giwa's complaints that coworkers were using racial slurs against him. Giwa testified that he had already successfully brought those concerns to the store managers who, in turn, took measures to prevent future harassment. The ULJ stated that although Wal-Mart "should have done more" to meet with Giwa, these failures "were not so adverse" as to justify leaving employment.

We are not convinced. Although Wal-Mart's management alleviated Giwa's concerns arising from the 2002 and 2005 incidents, Giwa contacted the MDHR to address ongoing harassment from his manager from 2004 to 2013. Generally, an aggrieved employee must give the employer an opportunity to take the appropriate steps before quitting the employment. *Munro Holding, LLC v. Cook*, 695 N.W.2d 379, 388 (Minn. App. 2005). "But, if upon reporting, an employee is given no assurance that the problem will be corrected, the employee has a good reason to quit." *Id*. The record reveals that Giwa complained to Wal-Mart's management about his manager's harassing behavior and management did not correct the problem. Thus, the ULJ's determination that Wal-Mart's failure to participate in mediation was not "so adverse" as to justify Giwa quitting his job is not supported by substantial evidence in the record when viewed as a whole. Mindful of our duty to apply the workers' compensation laws "in favor of awarding unemployment benefits," Minn. Stat. § 268.031, subd. 2 (2012), we reverse and remand to the ULJ for additional findings regarding the ongoing harassment to determine whether Giwa's reason for leaving was attributable to the employer.

## II.

Giwa claims that he had an agreement with Wal-Mart to work four days each week and Wal-Mart breached that agreement by failing to provide him with his regular schedule beginning in July 2013. We have held that "[g]ood cause to quit is generally found where an employer has breached the terms of an employment agreement." *Hayes v. K-Mart Corp.*, 665 N.W.2d 550, 553 (Minn. App. 2003), *review denied* (Minn. Sept. 24, 2003). A substantial reduction in hours is good cause to quit. *Haugen v.*

7

*Superior Dev., Inc.*, 819 N.W.2d 715, 723 (Minn. App. 2012). During the course of his employment, Giwa was scheduled to work four days each week. Beginning in July 2013, Wal-Mart began scheduling Giwa to work only one day each week. Giwa complained to the assistant store manager and learned that a new supervisor was creating the schedules. Although the assistant store manager indicated that she would fix Giwa's schedule for the week, Giwa's schedule was not changed.

The ULJ characterized Wal-Mart's actions as a "simple mistake" and determined that "a single week of reduced hours would not compel the average, reasonable worker to quit and become unemployed." However, we cannot determine the legal issue of whether Giwa's reason for quitting amounted to "good cause" because the ULJ's factual findings are not "substantially sustain[ed]" by the evidence in the record. *Skarhus*, 721 N.W.2d at 344. Specifically, there is insufficient evidence in the record to suggest that the change to Giwa's work schedule was a "simple mistake" rather than a permanent change in his hours or a demotion. It is also unclear from the record whether Wal-Mart corrected Giwa's schedule before he tendered his resignation, or in response to it. We therefore reverse and remand to the ULJ for additional findings regarding Giwa's work schedule and whether those findings support a conclusion that Giwa quit "because of a good reason caused by the employer." Minn. Stat. § 268.095, subd. 1(1).

**Reversed and remanded.**